[870 NE2d 1144, 839 NYS2d 714]

LAURENCE BROGGY et al., Appellants, v ROCKEFELLER GROUP, INC., et al., Respondents.

Argued June 6, 2007; decided July 2, 2007

### POINTS OF COUNSEL

*Kelner & Kelner,* New York City (*Gail S. Kelner* and *Joshua D. Kelner* of counsel), for appellants. I. The commercial window cleaning performed by plaintiff at the time of the subject occurrence was clearly within the scope of Labor Law § 240 (1). (*Bauer v Female Academy of Sacred Heart,* 97 NY2d 445; *Rivers v Sauter,* 26 NY2d 260; *Connors v Boorstein,* 4 NY2d 172; *Brown v Christopher St. Owners Corp.,* 87 NY2d 938; *Smith v Shell Oil Co.,* 85 NY2d 1000; *Joblon v Solow,* 91 NY2d 457; *Williamson v 16 W. 57th St. Co.,* 256 AD2d 507; *Harzewski v Centennial Dev.,* 270 AD2d 888; *D'Amico v Manufacturers Hanover Trust Co.,* 177 AD2d 441; *Panek v County of Albany,* 99 NY2d 452.) II. By overruling its own precedent in *Bustamante v Chase Manhattan Bank* (241 AD2d 327 [1997]) and erroneously limiting the plain language of Labor Law § 240 (1), the Appellate Division, First Department has exacerbated a disagreement among the Appellate Division departments. (*Bauer v Female Academy of Sacred Heart,* 97 NY2d 445; *Brown v Christopher St. Owners Corp.,* 87 NY2d 938; *Connors v Boorstein,* 4 NY2d 172; *Joblon v Solow,* 91 NY2d 457; *Smith v Shell Oil Co.,* 85 NY2d 1000; *Panek v County of Albany,* 99 NY2d 452; *Rukaj v Eastview Holdings, LLC,* 36 AD3d 519; *Stanley v Carrier Corp.,* 303 AD2d 1022; *Vasey v Pyramid Co. of Buffalo,* 258 AD2d 906; *Chapman v International Bus. Machs. Corp.,* 253 AD2d 123.) III. The Appellate Division misinterpreted the facts of the case and applicable law in concluding that there was no issue of fact concerning whether the work could have been performed from the ground. (*Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Sniadecki v Westfield Cent. School Dist.,* 272 AD2d 955; *Dasilva v A.J. Contr. Co.,* 262 AD2d 214; *Prats v Port Auth. of N.Y. & N.J.,* 100 NY2d 878; *Megna v Tishman Constr. Corp. of Manhattan,* 306 AD2d 163; *Hock v Builtland Partners,* 165 Misc 2d 1032, 233 AD2d 260; *Aiello v Rockmor Elec. Enters.,* 255 AD2d 470; *LaJeunesse v Feinman,* 218 AD2d 827; *Zuckerman v City of New York,* 49 NY2d 557; *Bryan v City of New York,* 206 AD2d 448.)

*Carfora Klar Gallo Vitucci Pinter & Cogan, LLP,* New York City (*Kimberly A. Ricciardi* of counsel), for respondents. I. The Appellate Division, First Department properly held that the routine cleaning work performed by plaintiff was not encom-

passed by Labor Law § 240 (1). (*Panek v County of Albany,* 99 NY2d 452; *Joblon v Solow,* 91 NY2d 457; *Brown v Christopher St. Owners Corp.,* 211 AD2d 441, 87 NY2d 938; *Connors v Boorstein,* 4 NY2d 172; *Machado v Triad III Assoc.,* 274 AD2d 558; *Rivers v Sauter,* 26 NY2d 260; *Esposito v New York City Indus. Dev. Agency,* 1 NY3d 526; *Kirk v Outokumpu Am. Brass, Inc.,* 33 AD3d 1136; *Adair v Bestek Light. & Staging Corp.,* 298 AD2d 153; *Acosta v Banco Popular,* 308 AD2d 48.) II. The Appellate Division, First Department properly dismissed plaintiff's complaint because plaintiff failed to establish that his accident was proximately caused by any violation of Labor Law § 240 (1). (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Negron v City of New York,* 22 AD3d 546; *Sprague v Peckham Materials Corp.,* 240 AD2d 392; *Laverne v Incorporated Vil. of Laurel Hollow,* 18 NY2d 635; *Allende v New York City Health & Hosps. Corp.,* 90 NY2d 333; *Estate of Canale v Binghamton Amusement Co.,* 37 NY2d 875; *Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Brooks v City of New York,* 212 AD2d 435.)

## OPINION OF THE COURT

READ, J.

On March 5, 1999, Laurence Broggy (plaintiff), who was employed by International Service System, Inc. (ISS), reported to work at 75 Rockefeller Plaza, a part of the Rockefeller Center complex in New York City. ISS (subsequently renamed One-Source Facility Services, Inc.) is in the business of providing cleaning and maintenance services to commercial building owners and managers, and plaintiff's supervisor had instructed him to wash the inside of 75 Rockefeller Plaza's eighth-floor windows. Plaintiff described himself as a "journeyman window washer" for ISS, because he would "go from building to building where . . . needed at a given time," as opposed to a "steady building employee," assigned by ISS to "work[ ] in a particular" structure.

When plaintiff arrived at work, he brought along his bucket and window washing "tools"—a wand, a squeegee and a bottle of soap. He met two other ISS employees at the building's front desk, and a security guard escorted them to the eighth floor. Plaintiff first went to the wash closet to fill his bucket with water. He and his two coworkers, who were equipped with safety belts for exterior window washing, then began to clean the windows in the eighth-floor offices. These windows were verti-

cally sliding sash windows, roughly four feet wide and six feet tall. The base of each window was three or four feet above the floor, and the top extended to within roughly six inches of the ceiling. Thus the top of each window was 9 or 10 feet above the floor.

As plaintiff described his window washing technique, he first applied soap and water to a window's interior surface, using the wand. Then he squeegeed off the soapy water and "wipe[d] the bottom of the window with a towel." Plaintiff cleaned the inside of "about eight" windows altogether in at least three different offices without incident. He did not testify that he required or used a ladder or platform to reach the top of these windows with his wand and squeegee.

Plaintiff and his coworkers eventually arrived at room 810, where three of the windows were aligned "in a row" on the wall opposite the doorway. As plaintiff entered the room, the window farthest to his left was about five or six feet from a corner of the office, and about four or five feet separated this window from the one to its immediate right. The third window was "well off" to the right of this pair of windows.

There were two mahogany desks in room 810. One of them was pushed with its back flush against the leftmost window, extending laterally "[a] couple of feet" beyond the window towards the corner of the office. The top of this desk was about three feet deep and 10 feet wide. A gallery—a one-inch-thick and four-inch-high protecting edge, raised above the desktop's surface—bordered its back, while the desktop itself was level with the window's sill. The three men considered moving this desk, but after "put[ting] [their] hands on" it, concluded that " '[w]e can't move this. It's too big.' " When asked if the desktop was empty or whether there were papers, a computer or anything else on it, plaintiff testified that he thought that there were "papers that were moved aside."

Protected by their safety belts, plaintiff's coworkers began to clean the exterior surfaces of room 810's windows, gaining access by stepping through a window onto an outside ledge. Meanwhile, plaintiff clambered up on top of the desk and began to clean the interior surface of the leftmost window, starting at the upper lefthand corner. Plaintiff was aware of the gallery because when he "climbed up on the desk to wash the window, [he] stepped over it to get closer to the window." After plaintiff completed cleaning the glass in the window's top sash, he

noticed that one of his coworkers was signaling that he wanted back into the office from the outside. Standing with his left foot on the windowsill and his right foot on the desktop, plaintiff lifted the bottom sash and moved his hands away, expecting the window to remain open. Instead, the bottom sash suddenly "slammed down," and plaintiff "tried to get [his] left foot out of the way" by moving it from the windowsill "[t]owards the desk." When he did this, his left instep "[came] into contact with" the gallery, causing him to lose his balance, fall backwards and hit his back first on the desktop and then the floor.

On February 15, 2002, plaintiff and his wife sued various parties identified as landlords, lessors, lessees or managers of 75 Rockefeller Plaza, alleging violations of Labor Law §§ 200, 202, 240 (1) and § 241 (6). Plaintiffs subsequently moved for partial summary judgment on liability under Labor Law § 240 (1) because plaintiff was "injured when he fell from the window sill which was being used as an elevated platform or scaffold from which to perform commercial window cleaning." Plaintiffs faulted defendants for failing to provide plaintiff with the safety devices necessary "to overcome the elevation differential of approximately four feet between the floor and the window so as to perform his task safely." Defendants opposed the motion, arguing that there were questions of fact as to whether cleaning the interior of a commercial building's windows was covered by Labor Law § 240 (1), and whether plaintiff's accident was proximately caused by the absence of any safety device listed in the statute. Defendants also moved to dismiss plaintiffs' remaining Labor Law claims. Supreme Court granted plaintiffs' motion for partial summary judgment and defendants' motion to dismiss, and defendants appealed.

The Appellate Division subsequently reversed Supreme Court, denied plaintiffs' motion for partial summary judgment on liability and, upon searching the record, granted summary judgment to defendants dismissing plaintiffs' Labor Law § 240 (1) claim and the complaint. The Appellate Division took the position that section 240 (1)'s protections are limited to cleaning that is related to building construction, demolition and repair work; or, if not carried out at a construction site, is incidental to activities making a significant physical change to the premises, citing our decisions in *Joblon v Solow* (91 NY2d 457 [1998]) and *Panek v County of Albany* (99 NY2d 452 [2003]). As an alternative ground, the Appellate Division concluded that plaintiffs had

"failed to establish the need for any safety device

affording protection from the effects of gravity in connection with the interior window cleaning at issue. [They] do not allege that any additional device, such as a ladder, was needed to permit the interior surfaces of the windows to be safely cleaned; nor do they allege that cleaning could not have been successfully performed from the floor level using the wand and squeegee supplied. (The record is devoid of evidence concerning the length of the handles on these tools.) Thus, there is no evidence from which this Court could conclude that the injured plaintiff was exposed to an elevation-related risk protected by the statute" (30 AD3d 204, 206-207 [1st Dept 2006] [citations omitted]).

We granted plaintiffs permission to appeal, and now affirm on the basis of the Appellate Division's alternative rationale.

Labor Law § 240 (1) provides that

"[a]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, *cleaning* or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed" (emphasis added).

Thus, "cleaning" is expressly afforded protection under section 240 (1) whether or not incidental to any other enumerated activity (*see Smith v Shell Oil Co.*, 85 NY2d 1000, 1002 [1995] [changing a lightbulb not protected under Labor Law § 240 (1) because it was "maintenance of a sort different from 'painting, cleaning or pointing,' *the only types of maintenance provided for in the statute*" (emphasis added)]). As a result, in *Brown v Christopher St. Owners Corp.* (87 NY2d 938, 939 [1996]), we did not preclude liability on the ground that the exterior window cleaning was not part of a construction, demolition, or repair project. Rather, we concluded that "routine, *household* window washing" was "not the kind of undertaking for which the Legislature sought to impose liability under Labor Law § 240" (emphasis added; *see also Connors v Boorstein*, 4 NY2d 172 [1958] [excluding cleaning of a private residence's windows from ambit of section 240 (1)]).

Further, our decisions in *Joblon* and *Panek* do not suggest that cleaning at a nonconstruction site falls outside the scope of section 240 (1) unless connected with altering. These cases dealt with the meaning of the statutory term "altering," not "cleaning." "Altering" and "cleaning" are discrete categories of activity protected under section 240 (1). Notably, in *Joblon*, we rejected the defendants' argument that only altering performed as part of a building construction job was covered by section 240 (1) (*see* 91 NY2d at 463-464).

In *Bauer v Female Academy of Sacred Heart* (97 NY2d 445 [2002]), we allowed a section 240 (1) claim to go forward where the plaintiff fell while cleaning the exterior of a third-story window at a school. We see no reason to limit *Bauer* to its facts—exterior window washing of a nondomestic character—as defendants urge. While interior window washing may not routinely entail the elevation-related risks that exterior window washing almost invariably poses, assigning liability under section 240 (1) on this basis would create an arbitrary dividing line unfaithful to legislative intent. The crucial consideration under section 240 (1) is not whether the cleaning is taking place as part of a construction, demolition or repair project, or is incidental to another activity protected under section 240 (1); or whether a window's exterior or interior is being cleaned. Rather, liability turns on whether a particular window washing task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against.

The burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff. Here, plaintiffs did not fulfill this burden. Plaintiff did not testify how high he could reach with his wand and squeegee while standing on the floor. He asserted that he had to stand on the desk, but provided no evidence to show that this was because he was required to work at an elevation to clean the interior of the windows. The desk may have been in plaintiff's way, or it may have been easier for him to reach the top of the windows while standing on the desk, or it may have been quicker for him to climb on the desk than to seek further assistance to move it. To recover under section 240 (1), however, plaintiff must establish that he stood on the desk because he was obliged to work at an elevation to wash the interior of the windows. Moreover, summary judgment in favor of defendants is proper because the evidence in this record demonstrates as a matter of law that plaintiff did not here need

protection from the effects of gravity. Prior to his accident, plaintiff had cleaned the interior of eight other windows of exactly the same height as those in room 810, and the record does not show that he needed a ladder or other protective device. The only "tools" that he testified to having used were a wand, a squeegee and a bottle of soap.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.