■ MILIHA FERLUCKAJ, Respondent-Appellant, v GOLDMAN SACHS & Co., Appellant-Respondent, et al., Defendant. GOLDMAN SACHS & Co., Third-Party Plaintiff-Appellant, v AMERICAN BUILDING MAINTENANCE Co., Third-Party Defendant-Respondent. [862 NYS2d 473]—

Order, Supreme Court, New York County (Rolando T. Acosta, J.), entered March 20, 2007, which, upon reargument, granted the motion of defendant Goldman Sachs (Goldman) for summary judgment to the extent of dismissing plaintiff's Labor Law § 240 (1) claim as against it, and granted third-party defendant American Building Maintenance Co.'s motion to dismiss Goldman's third-party claim against it for indemnification, modified, on the law, to deny Goldman summary judgment dismissing plaintiff's Labor Law § 240 (1) claim as against it, and otherwise affirmed, without costs. Order, same court and Justice, entered August 24, 2006, to the extent not superseded by the March 20, 2007 order, which, to the extent appealed from, denied Goldman summary judgment dismissing the complaint as against it, modified, on the law, to grant Goldman summary judgment only to the extent of dismissing the claims pursuant to Labor Law §§ 200, 202 and 241 (6) as against it, and otherwise affirmed, without costs.

Mazzarelli and Saxe, JJ., concur in a memorandum by Mazzarelli, J., as follows: Defendant Goldman leased several floors in the building at 32 Old Slip Road in Manhattan, including the 29th floor. Its lease provided that the building's owner, which is not a party to this action, would furnish cleaning services, including window washing. The owner contracted with plaintiff's employer, third-party defendant American Building Mainte-

nance Co. (ABM), to provide those cleaning services. The agreement between the owner and ABM required ABM to clean the exterior and interior of the building's windows every three months. It further provided for ABM, at the owner's request, to perform the initial cleaning of all interior windows at no extra charge "prior to tenant occupancy." From time to time, Goldman purchased cleaning services not covered by its lease directly from ABM. The services Goldman states it purchased directly from ABM were pantry maintenance and carpet care. Goldman maintains that it never purchased any exterior window cleaning (including cleaning of the interiors of such windows) directly from ABM.

It is unclear from the record when Goldman's lease commenced or when Goldman initially took occupancy of the 29th floor. It is undisputed, however, that between January and March 2001, defendant Henegan Construction Co. performed a complete build-out of several floors leased by Goldman in the building. This was pursuant to an agreement with Goldman and included the 29th floor. Plaintiff's accident occurred on March 22, 2001. By that date, Henegan had completed its construction work on the 29th floor, although some minor punch-list work may have been outstanding. Indeed, on the morning of the accident, plaintiff noticed some "construction material" and tools on the 29th floor and observed that it was "dusty."

On March 22, 2001, plaintiff was directed to go to the 29th floor to assist in cleaning the window interiors. The windows in the offices on the 29th floor rose from a point three feet above the floor and extended upward an additional six feet. Plaintiff was equipped with nothing other than a hand cloth to clean the windows. She stated in an affidavit submitted in support of her motion for summary judgment on her Labor Law § 240 (1) claims that she was "cleaning dust off the windows that was from the construction." Plaintiff took instructions related to the window cleaning exclusively from her ABM supervisor.

To clean the top of a window in one of the offices, plaintiff climbed on top of a desk adjacent to the windows. As she was moving along the width of the window, she fell off the desk to the floor, injuring herself. Plaintiff testified at her deposition that she knew at the time of the accident that there was a step stool with two steps in a supply closet maintained by ABM in the building but that she never asked for it. Plaintiff was not asked at her deposition, nor does the record otherwise reveal, how high the step stool was. Plaintiff further testified that her supervisor was aware that the cleaning staff stood on office desks to reach the tops of the windows.

Supreme Court initially denied plaintiff's motion for summary judgment on her Labor Law § 240 (1) claim and Goldman's cross motion for summary judgment dismissing the complaint in its entirety as against Goldman. The court found that the window cleaning could only be protected activity under the Labor Law if it was incidental to the construction work performed by Henegan, but found that an issue of fact existed regarding the nature of the work. Upon ABM's motion for reargument, however, the court dismissed plaintiff's section 240 (1) claim. The court did not revisit the issue of whether Goldman and Henegan were, respectively, an owner and contractor for purposes of Labor Law liability. Rather, the court found that, because she did not avail herself of the step stool, plaintiff was the sole proximate cause of her accident. The court also dismissed Goldman's claim against ABM for indemnification. Goldman had argued that ABM had a duty to indemnify it in accordance with ABM's agreement with the owner that ABM would indemnify the owner in connection with actions arising out of, inter alia, "any sub-contracted operations."

We modify Supreme Court's orders to reinstate plaintiff's claim against Goldman pursuant to Labor Law § 240 (1) and to dismiss plaintiff's claims against Goldman pursuant to Labor Law §§ 200, 202 and 241 (6). In its initial order, the court stated that plaintiff could only recover under Labor Law § 240 (1) upon a showing that the window cleaning was incidental to construction work. Since that finding, however, the Court of Appeals has clarified the law, holding that " 'cleaning' is expressly afforded protection under section 240 (1) whether or not incidental to any other enumerated activity" (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 680 [2007]). Moreover, it was error to dismiss the complaint on the basis that plaintiff was the sole proximate cause of her accident. On their own motions, defendants did not establish as a matter of law that the step stool would have been sufficient to permit plaintiff to avoid the accident (*see Balbuena v New York Stock Exch., Inc.*, 45 AD3d 279 [2007]).

Indeed, on plaintiff's motion, defendants failed to even raise a triable issue of fact regarding sole proximate cause (*see id.*). It is "unclear," as Justice Nardelli's concurrence concedes, whether a step stool would have been provided to plaintiff had she asked for one. This lack of clarity is not the result of conflicting factual allegations; rather, it is because defendants failed to set forth any evidence regarding the availability of the step stool. Furthermore, even if it were clear that a step stool would have been provided had plaintiff requested one, defendants, again,

failed to present any evidence as to whether it would have constituted an adequate safety device.

The statement in Justice Nardelli's concurrence that an issue of fact exists as to whether plaintiff's inattentiveness was the sole proximate cause of her accident is similarly unavailing. The sole proximate cause defense does not apply where plaintiff was not provided with an adequate safety device as required by the Labor Law (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]). Here, the desk that plaintiff was working on at the time of her accident did not constitute an adequate safety device.

Nevertheless, we decline to award summary judgment to either party at this juncture. A question exists as to whether Goldman, as a lessee, is liable here pursuant to Labor Law § 240 (1). That provision enumerates only contractors, owners and their agents as persons charged with providing protective devices to workers. However, a lessee may have liability as an "owner" under the Labor Law when it had the right or authority to control the work site (*see Bart v Universal Pictures*, 277 AD2d 4, 5 [2000]). Goldman argues that it had no authority over plaintiff's window cleaning because the work was being performed strictly pursuant to ABM's agreement with the owner. The dissent agrees, submitting that the contract between ABM and the building owner is prima facie evidence that Goldman did not request the work. However, the contract is not dispositive on its face. Accordingly, Goldman did not meet its prima facie burden merely by placing it in the record.

For the contract to have had any probative value for purposes of summary judgment, Goldman would have had to establish that the work that plaintiff was performing at the time of her accident was pursuant to one of two provisions in the contract: the provision requiring quarterly window cleaning or the provision requiring ABM, at the owner's request, to perform a one-time window cleaning prior to a tenant's occupancy. Goldman's own witness eliminated the first possibility (at least for summary judgment purposes) by testifying that the quarterly cleanings were only for in-possession tenants and that he did not know when Goldman occupied the space. Moreover, plaintiff presented some evidence that her accident occurred preoccupancy, by stating that construction tools and construction-related materials and dust were still present. As for the second provision, the dissent criticizes as "oblique" plaintiff's statement that "[t]here has been no testimony that [the building owner] requested the cleaning of the interior windows"; however, that statement, when one is cognizant of the fact that

the burden was on Goldman, is entirely appropriate and correct. We further note that Goldman's witness was not even aware of the provision, and that, moreover, Goldman did not offer the testimony or affidavit of anybody with personal knowledge regarding whether plaintiff's work was being performed pursuant to it.

Regardless of Goldman's status, plaintiff's Labor Law § 241 (6) claim against it should have been dismissed. The two Industrial Code sections cited by plaintiff in her brief—12 NYCRR 23-1.15 and 23-1.16—apply only where a worker was provided with safety railings and safety belts (§ 23-1.17) in the first instance (*see Dzieran v 1800 Boston Rd., LLC*, 25 AD3d 336, 337-338 [2006]). Plaintiff's Labor Law § 200 claim should also have been dismissed, since Goldman did not supervise plaintiff's work and any dangerous condition resulted from her employer's methods (*see Lombardi v Stout*, 80 NY2d 290, 294-295 [1992]). Finally, the court should have dismissed plaintiff's claim pursuant to Labor Law § 202, which requires owners, lessees, agents and managers of buildings and contractors to provide "safe means for the cleaning of the windows and of exterior surfaces." Contrary to Goldman's argument, that section does apply to the cleaning of interior windows (*see Bauer v Female Academy of Sacred Heart*, 250 AD2d 298, 301 n [1998]). However, in order to properly plead a Labor Law § 202 claim, a plaintiff must point to the violation of a specific provision of the Industrial Code (*see Brown v Christopher St. Owners Corp.*, 2 AD3d 172, 173 [2003], *lv dismissed* 1 NY3d 622 [2004]). As we have held herein, plaintiff has failed to invoke any relevant Industrial Code provision.

Goldman's claim against ABM for indemnification was properly dismissed as precluded by Workers' Compensation Law § 11, since Goldman did not have a written indemnification agreement with ABM and there are no allegations of grave injury (*see Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004]). The provision in the contract between ABM and the owner relied on by Goldman cannot be read to cover work performed by ABM pursuant to a direct contract with Goldman.

Nardelli, J., concurs in a separate memorandum as follows: I concur in the result, but I also find that issues of fact exist as to whether plaintiff's own acts or omissions were the sole proximate cause of the accident, thereby precluding summary judgment in her favor.

Labor Law § 240 (1), which is commonly referred to as the scaffold law, provides, in pertinent part, that: "[a]ll contractors and owners and their agents, except owners of one and two-

family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, *cleaning* or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders . . . which shall be so constructed, placed and operated as to give proper protection to a person so employed" (emphasis added).

The Court of Appeals has often observed that the purpose of the statute is to protect workers by placing the ultimate responsibility for safety practices where such responsibility belongs, on the owners and general contractors, instead of on the individual workers, who are not in a position to protect themselves (*Martinez v City of New York*, 93 NY2d 322, 325-326 [1999]; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985]; *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318 [1948]). Consistent with this objective, the Court of Appeals has stated that the statute places absolute liability upon owners, contractors, and their agents for any breach of the statutory duty which has proximately caused injury and, accordingly, it is to be construed as liberally as necessary to accomplish the purpose for which it was framed (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]; *Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]).

The application of "absolute liability" in section 240 (1) cases has, apparently, generated some confusion. Accordingly, in *Blake v Neighborhood Hous. Servs. of N.Y. City* (1 NY3d 280, 286-287 [2003]), the Court of Appeals clarified the use of the words strict or absolute liability in conjunction with the statute, noting that those terms do not appear in the current, or any former variation of the statute but, rather, were first used by the Court of Appeals in 1923 to describe an employer's duty under that section. The Court in *Blake* went on to caution that: "[i]t is imperative . . . to recognize that the phrase 'strict (or absolute) liability' in the Labor Law § 240 (1) context is different from the use of the term elsewhere. Often, the term means 'liability without fault' (*see generally* 3 Harper, James and Gray, Torts § 14.1 *et seq.* [2d ed 1986]), as where a person is held automatically liable for causing injury even though the activity violates no law and is carried out with the utmost care" (*id.* at 287-288). The Court of Appeals further commented that: "[g]iven the varying meanings of strict (or absolute) liability in these different settings, it is not surprising that the concept has generated a good deal of litigation under Labor Law § 240 (1). The terms may have given rise to the mistaken belief that a fall from a scaffold or ladder, in and of itself, results in an award of

damages to the injured party. That is not the law, and we have never held or suggested otherwise" (*id.* at 288). In sum, to prevail on a section 240 (1) cause of action, the plaintiff must demonstrate that the statute was violated and that such violation was a proximate cause of the injuries sustained (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]; *Delahaye v Saint Anns School*, 40 AD3d 679, 682 [2007]).

Initially, I agree with Justice Mazzarelli's conclusion that, in view of the recent Court of Appeals decision in *Broggy v Rockefeller Group, Inc.* (8 NY3d 675, 680 [2007]), the interior window cleaning being performed by plaintiff on the 29th floor of a 40-story office building is expressly afforded protection under section 240 (1), regardless of whether it is incidental to any of the other activities delineated in the statute.

The Court in *Broggy*, however, went on to state that:

"liability turns on whether a particular window washing task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against.

*"The burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff"* (*id.* at 681 [emphasis added]).

In this matter, I find that there is a plausible view of the evidence, sufficient to raise issues of fact, that no statutory violation occurred, and/or that plaintiff's own acts or omissions were the sole cause of the accident. Plaintiff testified that she was aware of the availability of step stools but neglected to request one, and it is unclear if one would have been provided had she so requested. It is also unclear if the section of the desk on which plaintiff was standing, which was located directly in front of the window, could have been removed, or was left in place because it was a convenient platform from which plaintiff could perform her task. What is clear is that the desk did not move, shift or wobble, but remained stable. Moreover, plaintiff testified that at the time of her fall off the desk, she was not looking where she was going or how far it was to the end of the desk, and that a fellow worker called her name immediately prior to her fall, possibly distracting her as she simply stepped off the end of the desk.

I disagree with Justice Mazzarelli's conclusion that "even if it were clear that a step stool would have been provided had plaintiff requested one, defendants, again, failed to present any evidence as to whether it would have constituted an adequate safety device," for, as the Court of Appeals in *Broggy* made clear, "[t]he burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide ade-

quate safety devices falls upon the plaintiff" (*Broggy*, 8 NY3d at 681). Moreover, while Justice Mazzarelli succinctly states that a desk does not constitute an adequate safety device, a point with which I agree, the use of a desk to wash windows, depending on the facts presented, also does not, in and of itself, preclude summary judgment in defendants' favor (*see generally Broggy v Rockefeller Group, Inc.*, 8 NY3d 675 [2007], *supra*).

I also find this Court's recent decision in *Miro v Plaza Constr. Corp.* (38 AD3d 454 [2007]), and the Court of Appeals' subsequent modification of that decision (9 NY3d 948 [2007], to be instructive. In *Miro*, the plaintiff was allegedly injured when he slipped and fell from a ladder that was partially covered with sprayed-on fireproofing material, which purportedly caused him to lose his footing. Plaintiff was aware of the undesirability of the ladder, but failed to request a clean replacement, although it was clear that there was no replacement on the job site and that one would have to have been delivered from an off-site storage area. The three-Justice majority, in dismissing plaintiff's section 240 (1) claim, concluded that "a plaintiff who knowingly chooses to use defective or inadequate equipment, notwithstanding being aware that he or she could request or obtain proper equipment, has no claim under Labor Law § 240 (1)" (38 AD3d at 455). The two dissenting Justices would have granted plaintiff partial summary judgment on the issue of liability under section 240 (1), finding, inter alia, that there was no replacement ladder on site and that plaintiff had testified that he complained to a superintendent about the condition of the ladder, but the superintendent simply shrugged.

The Court of Appeals modified, reinstated the section 240 (1) claim, and held, in its entirety, that "[a]ssuming that the ladder was unsafe, it is not clear from the record how easily a replacement ladder could have been procured" (9 NY3d at 949). Here, assuming the desk was unsafe, plaintiff was aware of the availability of a step stool and failed to request one, although it is unclear if one would have been provided had she done so.

Accordingly, I find that a jury could conclude that either plaintiff's admitted inattentiveness, which caused her to step into midair, or her failure to request a step stool, was the sole proximate cause of the accident. Summary judgment, therefore, in either plaintiff's or defendant's favor, is not warranted.

Tom, J.P., dissents in part in a memorandum as follows: The issue dividing this Court is whether there is any basis under Labor Law § 240 (1) for imposing liability on a tenant because an employee of a cleaning service company, engaged by the building's owner, sustained injury while performing work speci-

fied in the contract between the owner and the cleaning company. The tenant, defendant Goldman Sachs & Co., is a stranger to the contract, and the injured plaintiff has failed to provide any proof to establish that Goldman either contracted for, or exercised control over, the window cleaning work. Thus, there is no basis upon which liability may be imposed on Goldman, and its cross motion to dismiss plaintiff's Labor Law § 240 (1) claim was properly granted.

Defendant Goldman was the tenant of the 29th floor of a building owned by nonparty Paramount Group, Inc. Paramount engaged third-party defendant American Building Maintenance Co. (ABM), plaintiff's employer, to perform cleaning services for the building. The 29th floor had been undergoing renovation work by defendant Henegan Construction Co., hired by Goldman. On March 22, 2001, plaintiff was assigned to work overtime by an ABM supervisor. She was directed to proceed to the 29th floor of the building, located at 32 Old Slip Road in Manhattan, to clean interior office windows. Plaintiff was supplied with only a rag to clean the windows, and she found it necessary to climb onto office desks "to reach the top of the windows." She sustained injury while "she was cleaning the window in front of her and was moving to the left and fell off the desk on to the floor."

Plaintiff sought summary judgment as to liability against Goldman and Henegan on her Labor Law § 240 (1) claim. Goldman cross-moved to dismiss the claims asserted by plaintiff against it under the Labor Law. Henegan also moved for summary judgment dismissing the complaint, adopting the arguments advanced by Goldman. Henegan additionally sought dismissal of Goldman's cross claims against it.

To recover under Labor Law §§ 200, 240 and 241 as a member of the special class for whose protection these provisions were enacted, it must be established that the plaintiff was hired by the owner, general contractor or an agent of the owner or general contractor (*Mordkofsky v V.C.V. Dev. Corp.*, 76 NY2d 573, 576-577 [1990]; *Whelen v Warwick Val. Civic & Social Club*, 47 NY2d 970, 971 [1979]). Liability will not be imposed under Labor Law § 240 merely because injury was sustained in the vicinity of an ongoing construction project, even if the injured party was performing a function related to that project (*see Martinez v City of New York*, 93 NY2d 322 [1999] [entity for which plaintiff acted not engaged to perform statutorily protected activity]; *Gibson v Worthington Div. of McGraw-Edison Co.*, 78 NY2d 1108, 1109 [1991] [same]). As this Court has noted, "A lessee is liable under the statute only where it

can be shown that it was in control of the work site, and one test of such control is where the lessee actually hires the general contractor" (*Guzman v L.M.P. Realty Corp.*, 262 AD2d 99, 99 [1999], citing *Frierson v Concourse Plaza Assoc.*, 189 AD2d 609, 611 [1993]).

In support of its motion, Goldman submitted the service contract executed by ABM and Paramount. The contract provides that ABM, as contractor, will perform all window cleaning, encompassing the cleaning of "all interior and exterior windows and frames," to be performed "every three (3) months." The contract further states: "Prior to tenant occupancy, contractor shall provide the initial cleaning o[f] all interior windows for which there will be no charge to Paramount Group, Inc. or tenant. Work to be performed upon request of Paramount Group Inc."

The cleaning service contract unambiguously provides that, at Paramount's request, ABM will clean all interior windows prior to tenant occupancy. Plaintiff has conceded that, as of the date of her injury, March 22, 2001, Goldman had not yet taken occupancy of the 29th floor. Her supporting affidavit states that Goldman's employees "moved in their personal items to the 29th floor on March 23 and 24, 2001." She further restated in her opposition to the cross motion that Goldman's "employees had not moved into the 29th floor." Thus, on the motion, plaintiff did not raise any factual issue as to whether the work in which she was engaged at the time of her accident was performed pursuant to ABM's contract with Paramount requiring a one-time cleaning of the interior windows prior to tenant occupancy.

On its cross motion, Goldman also submitted the transcript of deposition testimony given by Robert Barriero, its vice-president for corporate services, to demonstrate that it did not independently order window cleaning services from ABM. Barriero stated that Goldman received "base building cleaning services from Paramount as part of our lease," which services were provided by Paramount's vendor, ABM. He noted that Goldman was required to use the base building cleaning services contractor, and he acknowledged that Goldman's agent, Hines Interests, Ltd., contracted directly with ABM for cleaning work that was not included in the base cleaning services provided under the lease. The supplemental cleaning services he described were limited to "[p]antry maintenance, some carpet care, shampooing."

In her opposition to the cross motion, plaintiff did not address the significance of the contract between Paramount and

ABM except to concede that ABM "had been hired by Paramount Group, the owner . . . to do cleaning for the tenants in the building." Plaintiff also acknowledged that Goldman had directly contracted with ABM for "extra services . . . such as cleaning pantries, stripping and waxing floors and shampooing carpets." She cited the deposition testimony of Al Hoti, an ABM employee, who stated that the cleaning ABM performed directly for Goldman consisted of the activities plaintiff described as well as "cleaning refrigerators [and] providing plastic liners," presumably for trash receptacles. Thus, the record is clear that any extra cleaning services provided to Goldman by ABM did not include the cleaning of windows.

The dispositive evidence in this matter consists of the testimony of Robert Barriero, Goldman's vice-president for corporate services, the testimony of Al Hoti, ABM's employee, and the contract between ABM and Paramount. Thus, Goldman provided evidence from persons with personal knowledge of the facts to establish that plaintiff was hired by ABM, as agent for the building's owner, Paramount Group. No proof was offered by plaintiff, in rebuttal, to support the intimation that she might have been hired by Goldman or its agent, Henegan. Thus, there is no basis for imposing vicarious liability on Goldman on the ground that plaintiff was hired either by it or by its general contractor.

It should be emphasized that the sole theory of recovery against Goldman advanced by plaintiff before the motion court was that Goldman is an "owner," as defined under the Labor Law, because it hired Henegan to perform renovation work at the leased premises. Because she was performing cleaning that was "incidental" to Henegan's construction work, plaintiff reasoned that she is therefore covered by the Labor Law, irrespective of who hired her, and that Goldman is vicariously liable under Labor Law § 240 (1). Significantly, plaintiff did not contend that Goldman hired ABM to perform the *window* cleaning in which she was engaged at the time of her fall. In fact, she failed to identify any cleaning work that she, as an employee of ABM, performed for Goldman, either directly or at the behest of Goldman's agent, Hines.

Throughout this litigation, plaintiff has never claimed that Goldman is subject to liability under Labor Law § 240 (1) because it exercised, or had authority to exercise, control over the work she was performing at the time she sustained injury or because Goldman contracted, either directly or through its agent, with ABM for the window cleaning work in which she was engaged. On appeal, plaintiff continues to assert that

Goldman's liability under Labor Law § 240 (1) is vicarious, contending that Henegan's duties as construction manager "determine its status as a contractor or agent of Goldman"; that Goldman and Henegan failed in their statutory duty to provide any safety devices to plaintiff, "a cleaner at a construction site"; that her activities were related to the construction work and therefore covered under Labor Law § 240 (1); and that Goldman is liable for her injuries, which were proximately caused by its breach of the statute. The defect in plaintiff's position is that Henegan did not hire or request plaintiff to clean the subject windows, and therefore Goldman cannot be held vicariously liable to plaintiff for her injuries. Furthermore, plaintiff's Labor Law § 240 (1) claim against Henegan has since been dismissed, and this avenue of recovery is unavailing as against either party to the renovation contract.

Plaintiff now obliquely asserts, for the first time on appeal, that "[t]here has been no testimony that Paramount requested the cleaning of the interior windows." She adds, "Goldman has just made the assumption that Paramount requested the cleaning of the interior windows." She goes on to state that "Henegan had laborers on site at 32 Old Slip through March 28, 2001," six days after her accident. Plaintiff intimates that Henegan or Goldman might have requested ABM to assist in cleaning up the 29th floor, but she points to no evidence to support such a theory.

In view of plaintiff's concession that she was employed by ABM and that window cleaning was undertaken just prior to Goldman's occupancy of the 29th floor, the only explanation for her work on the date of the accident is ABM's performance of its contract with Paramount providing for the preoccupancy cleaning of interior windows at the building owner's request. Goldman therefore demonstrated its prima facie entitlement to summary judgment, placing the burden upon plaintiff to come forward with evidence in admissible form sufficient to raise a triable issue of material fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Although Goldman squarely raised the issue in its opposing papers, plaintiff failed to come forward with any evidence in rebuttal to demonstrate that either Goldman or Henegan had entered into a contract for window cleaning services with ABM. This omission is notable in view of Barriero's testimony that both Goldman and its agent, Hines, maintained a record of any funding request made in connection with ABM's provision of services outside those provided under the lease in accordance with ABM's contract with Paramount.

This Court has consistently observed the rule that a party may not "argue on appeal a theory never presented to the court of original jurisdiction" (*Recovery Consultants v Shih-Hsieh*, 141 AD2d 272, 276 [1988], citing *Huston v County of Chenango*, 253 App Div 56, 60-61 [1937], *affd* 278 NY 646 [1938]; *see e.g. Sean M. v City of New York*, 20 AD3d 146, 149-150 [2005]). As stated in *Cohn v Goldman* (76 NY 284, 287 [1879]), "It is, indeed, a rule, that questions not raised at the trial court, which might have been obviated by the action of the court then, or by that of the other party, will not be heard on appeal as ground of error." Plaintiff should not be heard to argue, for the first time, that Goldman is liable for her injuries because it might have had the authority to exercise control over the work site, and, indeed, plaintiff makes no such argument.

This is precisely the theory of recovery postulated by the majority on plaintiff's behalf, relying on this Court's decision in *Bart v Universal Pictures* (277 AD2d 4 [2000]). It should be noted, however, that the lessee in *Bart* was *contractually* obligated to control the work site and to ensure that the work was safely performed (*id.* at 5-6; *see also Shun Jian Ke v Hsu & Assoc.*, 300 AD2d 140 [2002]). There is no proof that Goldman had a contract with ABM for window cleaning services, let alone that Goldman was under a contractual obligation to ensure the safety of the work site. Moreover, the majority has cited no case in which liability under Labor Law § 240 has been predicated on a tenant's mere right to reenter the premises rather than on the basis of its actual control over the work being performed (*cf. Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 565-566 [1987] [owner with right of reentry and inspection liable for injury due to defect on premises under Multiple Dwelling Law § 78]).*

The majority takes the position that the evidence is insufficient to entitle Goldman to summary judgment dismissing plaintiff's Labor Law 240 (1) claim against it because it failed to offer evidence by someone with personal knowledge of the facts that plaintiff's window cleaning work was performed pursuant to the contract between ABM and Paramount. Quite apart from ignoring substantial evidence, this supposition presumes that Goldman was capable of contracting directly with ABM for the window cleaning work, a proposition that is simply untenable. As a matter of fact, it defies credulity that Goldman would contract with ABM for the same window cleaning services ABM

---

* It is clear that the majority finds no liability based on Goldman's actual control over the premises because it agrees that there is no basis for common-law liability under Labor Law § 200.

was obligated to provide for Goldman's benefit under its agreement with Paramount. More significantly, as a matter of law, Goldman could not contract with ABM for window cleaning services ABM was already obligated to provide under its existing contract with Paramount (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 212-213 [1991] ["one cannot be induced to tender a performance which is required as a part of a preexisting contractual obligation"]). As the Court of Appeals has succinctly observed, "A covenant to do what one is already under a legal obligation to do is not sufficient consideration for another contract" (*Ripley v International Rys. of Cent. Am.*, 8 NY2d 430, 441 [1960]).

That the window cleaning work was performed pursuant to the agreement between ABM and Paramount is confirmed by explicit contract language. It is further supported by Barriero's testimony that Goldman was obligated under its lease to use ABM's services. Barriero and Hoti both stated that supplemental cleaning services provided directly to Goldman by ABM did not include window cleaning. Thus, there is both documentary and testimonial evidence supporting Goldman's contention that plaintiff's presence at the work site was due to ABM's obligation to provide initial cleaning of interior windows under its contract with the building owner.

While the opponent of a summary judgment motion may normally offer an excuse for the failure to present opposing proof in admissible form (*Zuckerman*, 49 NY2d at 562), where the opposing party has likewise moved for summary judgment, this option is unavailable. By moving for an accelerated disposition, plaintiff represented that the record proof was sufficient to warrant judgment in her favor. As this Court observed in *News Am. Mktg., Inc. v Lepage Bakeries, Inc.* (16 AD3d 146, 149 [2005]): "By moving for accelerated judgment, a party submits the case for disposition on the record evidence, and the propriety of the court's decision will be reviewed on the basis of that same evidence. It is settled that an appellate court is bound by the record (*Block v Nelson*, 71 AD2d 509 [1979]), and, absent matter that is subject to judicial notice, review is limited to the evidence before the motion court (*Broida v Bancroft*, 103 AD2d 88, 93 [1984]; *see also Becker v City of New York*, 249 AD2d 96, 98 [1998]). As we stated in *Ritt v Lenox Hill Hosp.* (182 AD2d 560, 562 [1992]), 'If a movant, in preparation of a motion for summary judgment, cannot assemble sufficient proof to dispel all questions of material fact, the motion should simply not be submitted.' " Having moved for judgment on the record, plaintiff cannot now assert, contrariwise, that the record does

not support the motion court's disposition on the evidence before it.

Finally, plaintiff has not proffered any excuse for her failure to submit admissible opposing evidence in opposition to the cross motion to warrant trial of an issue of fact. Thus, she has offered neither proof to controvert Goldman's evidence demonstrating that she performed window cleaning in accordance with Paramount's contract with her employer nor an excuse for her failure to do so, and her opposition fails to meet the requirements to defeat a motion for summary judgment (*Zuckerman*, 49 NY2d at 562). The intimation that Goldman might have directly hired ABM to do unspecified cleaning work, for reasons not even suggested, is speculative and does not suffice to meet her obligation "to submit evidentiary facts or materials, by affidavit or otherwise, rebutting the prima facie showing . . . and demonstrating the existence of a triable issue of ultimate fact" (*Indig v Finkelstein*, 23 NY2d 728, 729 [1968]). It is settled that "mere conclusions, expressions or hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman*, 49 NY2d at 562).

Accordingly, plaintiff failed to rebut Goldman's prima facie showing that it did not hire her employer to perform window cleaning work, and her Labor Law § 240 (1) claim against said defendant was properly dismissed.

Reargument granted, and upon reargument, the decision and order of this Court entered April 10, 2008 (50 AD3d 359 [2008]) recalled and vacated and a new decision and order substituted therefor. Leave to appeal to the Court of Appeals granted, as indicated.

