■ DENNIS COLEMAN, Appellant-Respondent, v CRUMB RUBBER MANUFACTURERS, Respondent-Appellant. [940 NYS2d 170]—

Garry, J.

Plaintiff, a welder, was injured while working on defendant's building located in the City of Albany. The building was being converted from a warehouse to a rubber recycling facility. At the time of his injury, plaintiff was working in an area known as the hammermill room. Defendant's contractor had installed permanent flooring consisting of metal grates laid on top of I-beams. A belt guard protruded upward through a gap in this floor from machinery located in a basement 10 feet below. The floor surrounding this belt guard had not yet been completed, and an unprotected opening existed at one end of the guard. Plaintiff testified that he was aware of this opening and had covered it with a wooden pallet on the day of his injury, but later returned after a brief absence to find that the pallet had been removed. He searched unsuccessfully for another cover and then returned to work, climbing a ladder near the hole to install a ceiling beam. It became necessary to reposition this beam, so plaintiff descended the ladder, walked across the floor towards a second ladder, and stepped into the opening. His left leg fell in up to his groin, while his body and other leg remained above the hole.

Plaintiff commenced this action alleging common-law negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). He thereafter moved for summary judgment, and defendant moved for summary judgment dismissing the complaint.

Supreme Court denied plaintiff's motion in its entirety and granted defendant's motion in part, dismissing plaintiff's claims pursuant to Labor Law §§ 200, 240 (1) and common-law negligence. These cross appeals followed.

Supreme Court properly dismissed plaintiff's claim under Labor Law § 240 (1), which protects workers against certain elevation-related hazards. "The extraordinary protections of Labor Law § 240 (1) extend only to a narrow class of special hazards, and do 'not encompass any and all perils that may be connected in some tangential way with the effects of gravity' " (*Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 915-916 [1999], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993] [emphasis omitted]). Liability under the statute exists when a worker's "task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against" (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 [2007]). The existence of a lower level below the floor where plaintiff was working, without more, did not create an elevation-related risk, nor did plaintiff's "mere proximity" to the opening in the floor give rise to the statutory protections (*D'Egidio v Frontier Ins. Co.*, 270 AD2d 763, 765-766 [2000], *lv denied* 95 NY2d 765 [2000]; *see Wells v British Am. Dev. Corp.*, 2 AD3d 1141, 1142-1143 [2003]). Rather, "a work site is elevated within the meaning of the statute where the required work itself must be performed at an elevation . . . such that one of the devices enumerated in the statute will safely allow the worker to perform the task" (*Leshaj v Long Lake Assoc.*, 24 AD3d 928, 929 [2005] [internal quotation marks and citations omitted]; *see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). At the time of his injury, plaintiff was not performing his work at an elevation; he had descended the ladder where he had been working and was walking across a level, permanent floor—a task which did not warrant the use of the protective devices required by Labor Law § 240 (1). As his accident did not result from the special elevation hazards envisioned by Labor Law § 240 (1), his claim under that statute was properly dismissed (*see Wells v British Am. Dev. Corp.*, 2 AD3d at 1142-1143; *Paolangeli v Cornell Univ.*, 296 AD2d 691, 692 [2002]; *Alvia v Teman Elec. Contr.*, 287 AD2d 421, 422 [2001], *lv dismissed* 97 NY2d 749 [2002]; *D'Egidio v Frontier Ins. Co.*, 270 AD2d at 765-766).

We further agree with Supreme Court that defendant did not meet its burden relative to plaintiff's claim under Labor Law § 241 (6). Plaintiff relies upon 12 NYCRR 23-1.7 (b) (1) (i), which requires "[e]very hazardous opening into which a person may

step or fall" to be covered or protected by a safety railing. This regulation "is sufficiently specific to serve as a predicate for [a] Labor Law § 241 (6) claim" (*Bonse v Katrine Apt. Assoc.*, 28 AD3d 990, 990 [2006]; *see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d at 505), but it does not apply to every gap or opening. Case law has established that an opening must be of "significant depth and size" to fall within the regulation's protection (*D'Egidio v Frontier Ins. Co.*, 270 AD2d at 765). No specific minimum size has been established, but as defendant argues, many cases applying this provision reference a hole "large enough for a person to fall through to a lower area" (*Wells v British Am. Dev. Corp.*, 2 AD3d at 1144; *see Milanese v Kellerman*, 41 AD3d 1058, 1061-1062 [2007]; *Messina v City of New York*, 300 AD2d 121, 123-124 [2002]; *Alvia v Teman Elec. Contr.*, 287 AD2d at 422). It is not necessary, however, that an injured worker actually fall all the way through such an opening to sustain a claim premised on this regulation (*see Pilato v Nigel Enters., Inc.*, 48 AD3d 1133, 1134-1135 [2008]; *Bonse v Katrine Apt. Assoc.*, 28 AD3d at 990; *Keegan v Swissotel N.Y.*, 262 AD2d 111, 112-114 [1999], *lv dismissed* 94 NY2d 858 [1999]), and an opening 14 to 16 inches wide has been found sufficiently large to support such a claim (*see Pilato v Nigel Enters., Inc.*, 48 AD3d at 1135).

Here, defendant's plant manager testified by affidavit that he measured and photographed the hole where plaintiff fell. He averred that there was only one opening into which part of a person's body could fall, measuring 12 inches long by 16 inches wide, and that the belt guard and other machinery were located in such close proximity to this gap that they "work to prevent a person from falling from the floor level to the subfloor level." He did not, however, supply a measurement of the hole's depth. Supreme Court found that these incomplete measurements were insufficient to prove that the hole was not of "significant depth and size" (*D'Egidio v Frontier Ins. Co.*, 270 AD2d at 765), and that neither the manager's opinion as to the potential for a person's body to fall through the hole nor his photographs were sufficient to establish that the hole was not a hazardous opening within the meaning of the regulation. Viewing the evidence in the light most favorable to plaintiff and affording him the benefit of every positive inference (*see Rought v Price Chopper Operating Co., Inc.*, 73 AD3d 1414, 1414-1415 [2010]; *Wells v British Am. Dev. Corp.*, 2 AD3d at 1142 n 1), we agree. Thus, this branch of defendant's motion was properly denied "regardless of the adequacy of plaintiff['s] opposition" (*Bonse v Katrine Apt. Assoc.*, 28 AD3d at 991; *see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Finally, we agree with plaintiff that Supreme Court erred in dismissing his claims based on common-law negligence and Labor Law § 200. To meet its initial burden on its summary judgment motion, defendant was required to establish that it did not create the opening in the floor and had no actual or constructive notice of it (*see Weinberg v Alpine Improvements, LLC*, 48 AD3d 915, 918-919 [2008]; *Wolfe v KLR Mech., Inc.*, 35 AD3d 916, 919 [2006]). Defendant made no such showing, contending instead that its general duty to provide plaintiff with a reasonably safe workplace did not extend to the hole in the floor because it was "readily observable" and plaintiff acknowledged that he was aware of its presence (*Gavigan v Bunkoff Gen. Contrs.*, 247 AD2d 750, 751 [1998], *lv denied* 92 NY2d 804 [1998]; *see Reynolds v Fisher*, 220 AD2d 968, 969 [1995]). However, this Court has held that an injured person's knowledge of a readily observable dangerous condition "does not, standing alone, necessarily obviate a landowner's duty to maintain his or her property in a reasonably safe condition" (*MacDonald v City of Schenectady*, 308 AD2d 125, 127 [2003]). Subsequently, we determined that this "marked departure from established precedent . . . [is] applicable to a claim made under Labor Law § 200 since it codifies the common law" (*England v Vacri Constr. Corp.*, 24 AD3d 1122, 1124 n 3 [2005]). Thus, even though the allegedly dangerous condition in the workplace in *England* "was readily observable and well known to [the worker] prior to the accident, these circumstances merely negated any duty that [the landowner] owed [the worker] to warn of potentially dangerous conditions; they do not, without more, obviate the duty to provide a reasonably safe workplace" (*id.* at 1124 [internal quotation marks and citation omitted]). Here, as in *England*, plaintiff's awareness of the hole in the floor raises triable issues of fact as to his comparative negligence, but does not relieve defendant of its duty to maintain the premises in a reasonably safe condition as a matter of law. As defendant did not meet its prima facie burden to demonstrate that this duty was satisfied, plaintiff's common-law negligence and Labor Law § 200 claims should not have been dismissed (*see id.*; *see also Bax v Allstate Health Care, Inc.*, 26 AD3d 861, 863 [2006]; *Tulovic v Chase Manhattan Bank*, 309 AD2d 923, 924-925 [2003]).

Lahtinen, J.P., Spain, Stein and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion dismissing plaintiff's Labor Law § 200 and common-law negligence causes

of action; motion denied to said extent; and, as so modified, affirmed.