■ JOSE A. SOTO, Appellant, v J. CREW INC. et al., Respondents. [945 NYS2d 255]—Order, Supreme Court, New York County (Jane S. Solomon, J.), entered September 26, 2011, which granted defendants' motions for summary judgment dismissing the complaint, and denied plaintiff's cross motion for summary judgment on the issue of liability on his Labor Law § 240 (1) cause of action, affirmed, without costs.

Plaintiff, an employee of a commercial cleaning company that contracted with the J. Crew defendants to provide general daily maintenance services to their store, was injured when he fell off an A-frame ladder while dusting the top of a shelf. The dismissal of the Labor Law § 240 (1) cause of action was proper. The dusting of the shelf constituted routine maintenance and was not the type of activity that is protected under the statute (*see Diaz v Applied Digital Data Sys.*, 300 AD2d 533 [2002]). The term "cleaning" as used under the statute is not to be as broadly applied as plaintiff suggests (*see Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521, 526, [2012]). Concur—Mazzarelli, J.P., DeGrasse, Manzanet-Daniels and Román, JJ.

Catterson, J., concurs in a separate memorandum as follows: I concur because I am constrained by the Court of Appeals' recent holding in (*Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521 [2012]), which, nevertheless, in my opinion cannot be reconciled with extensive recent precedent of the Court or the plain wording of Labor Law § 240 (1).

The plaintiff correctly asserts that *Swiderska v New York Univ.* (10 NY3d 792 [2008]) and *Broggy v Rockefeller Group, Inc.* (8 NY3d 675 [2007]) both stand for the proposition that commercial cleaning is a protected activity under Labor Law § 240 (1).

In *Broggy*, Judge Read, writing for a unanimous Court, began the analysis by quoting section 240 (1): "[A]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, *cleaning* or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed

and operated as to give proper protection to a person so employed" (*Broggy*, 8 NY3d at 680, at 716-717).

The Court next held that, "[t]hus, 'cleaning' is expressly afforded protection under section 240 (1) whether or not incidental to any other enumerated activity."(8 NY3d at 680.) The Court made plain that its prior decisions in *Joblon v Solow* (91 NY2d 457 [1998]) and *Panek v County of Albany* (99 NY2d 452 [2003]) were not to the contrary. Both *Joblon* and *Panek* "dealt with the meaning of the statutory term 'altering,' not 'cleaning.' " (*Broggy*, 8 NY3d at 681.) " 'Altering' and 'cleaning' are discrete categories of activity under section 240 (1)." (*Id.*)

In *Broggy*, the defendants contended that the Court's prior holding in *Bauer v Female Academy of Sacred Heart* (97 NY2d 445 [2002]) should be construed as limiting section 240 (1) protection in a window cleaning context to exterior windows. The Court rejected this distinction and set out the analytical framework to be employed when considering section 240 (1) protections: "We see no reason to limit *Bauer* to its facts—exterior window washing of a nondomestic character—as defendants urge. While interior window washing may not routinely entail the elevation-related risks that exterior window washing almost invariably poses, assigning liability under section 240 (1) on this basis would create an arbitrary dividing line unfaithful to legislative intent. The crucial consideration under section 240 (1) is not whether the cleaning is taking place as part of a construction, demolition or repair project, or is incidental to another activity protected under section 240 (1); or whether a window's exterior or interior is being cleaned. Rather, liability turns on whether a particular window washing task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against." (*Broggy*, 8 NY3d at 681.) It seems patent that while window cleaning was the underlying factual predicate for the *Broggy* holding, the above-quoted analysis is in no way analytically dependent on the cleaning of windows qua windows. If we were to substitute the cleaning of window blinds, valances, sashes or case moldings in situ in place of the *Broggy* windows themselves, the result under the Court's analysis would have been the same.

The holding in *Swiderska* tracks and cites *Broggy*. Like *Broggy*, the Court in *Swiderska* did not limit "cleaning" to windows. The factual predicate for the application of section 240 (1) was "part of a commercial cleaning contract" that required the plaintiff to clean the interior side of a 10-foot-high window. (*Swiderska*, 10 NY3d at 792.) The Court found that to clean the window, the plaintiff was required to "climb upon

pieces of furniture in order to complete her work—creating an elevation-related risk—and she was not provided a ladder, scaffold or other safety device of the kind contemplated under the statute." (10 NY3d at 793.)

The holding in *Dahar* appears to be a significant sea change in section 240 (1) jurisprudence that overrules *sub silentio* the analysis of *Broggy*. In *Dahar*, the Court acknowledges that *Broggy* stands for the proposition that "the term 'cleaning' . . . is not limited to cleaning that was 'part of a construction, demolition, or repair project.' " (*Dahar*, 18 NY3d at 525, quoting *Broggy*, 8 NY3d at 680.) Whereupon, the Court then proceeds to limit its analysis ("[w]e have never, however, gone as far as plaintiff here asks us to go—to extend the statute to reach a factory employee engaged in cleaning a manufactured product") in direct contravention of what is, heretofore, considered doctrine. (*Dahar*, 18 NY3d at 525.)

The Court of Appeals holding in *Runner v New York Stock Exch., Inc.* (13 NY3d 599 [2009, Lippman, Ch. J.]), is instructive. In *Runner*, the Court framed the general scope of section 240 (1): "[T]he purpose of the strict liability statute is to protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction worksite elevation differentials, and, accordingly, . . . there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk." (*Runner*, 13 NY3d at 603, citing *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). The *Runner* Court held that there is an inquiry common to all section 240 (1) cases: "[W]e think the dispositive inquiry framed by our cases does not depend upon the precise characterization of the device employed or upon whether the injury resulted from a fall, either of the worker or of an object upon the worker. Rather, the single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." (*Runner*, 13 NY3d at 603.)

The *Runner* Court could not have been clearer that what is dispositive is the activity being performed by the worker and whether the injury resulting from performance of that activity arose from the application of Newton's first law of gravity: "whether the harm flows directly from the application of the force of gravity to the object." (13 NY3d at 604.)

Up to this point in time, the inquiry in section 240 (1) claims appeared settled. To recap, in *Broggy*, the Court held that "cleaning" was, in and of itself, a protected activity under the

statute; in *Runner* the Court held that it is the nature of the activity and injury together with gravity's impact on both, that determines coverage under section 240 (1).

The holding in *Dahar* is at odds with both holdings. In *Dahar*, the focus has shifted from i) that "cleaning" is a protected activity and ii) the application of gravity to that activity, to an analysis based solely on the locus of the activity and the nature of the object being cleaned.

The *Dahar* Court bolsters this position shift with the observation that "every case we have decided involving 'cleaning' as used in Labor Law § 240 (1), with a single exception, has involved cleaning the windows of a building." (18 NY3d at 525.) Of course, merely because the fact patterns of previous section 240 (1) "cleaning" cases involved windows does not materially advance the *Dahar* rationale. In none of the cases cited by the Court is the focus of the analysis on the object being cleaned as opposed to the consideration of the gravity related risks attendant to what type of cleaning was being performed. It would seem that *Broggy*, *Runner*, and *Swiderska* compel the exact opposite conclusion.

Finally, a simple hypothetical demonstrates the mischief attendant to the *Dahar* holding. Worker "A" is compelled to clean the top of a 50-foot-tall widget. Worker "B" is required to clean the top of a 12-foot-tall window. Both workers are exposed to a gravity related risk of injury and both are "cleaning" for the purposes of section 240 (1). Yet, under *Dahar*, if worker "A" plummets to misfortune whilst cleaning, he or she is not afforded protection of section 240 (1). Worker "B" on the other hand, by the simple fact that he or she is cleaning a window, is protected by section 240 (1). In my view, the Court in *Dahar* could not have intended such a wholesale retreat from *Broggy*, *Runner*, and *Swiderska*. **[Prior Case History: 2011 NY Slip Op 32518(U).]**