[998 NE2d 1045, 976 NYS2d 421]

JOSE A. SOTO, Appellant, v J. CREW INC. et al., Respondents.

Argued September 11, 2013; decided October 10, 2013

## POINTS OF COUNSEL

*Profeta & Eisenstein*, New York City (*Fred R. Profeta, Jr.*, of counsel), for appellant. I. The Appellate Division erred in concluding that this Court's decision in *Dahar v Holland Ladder & Mfg. Co.* (18 NY3d 521 [2012]) precluded Labor Law § 240 (1) coverage of "routine maintenance" cleaning. (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675; *Buendia v New York Natl. Bank*, 223 AD2d 456, 91 NY2d 812; *Diaz v Applied Digital Data Sys.*, 300 AD2d 533; *Swiderska v New York Univ.*, 10 NY3d 792; *Cruz v Bridge Harbor Hgts. Assoc.*, 249 AD2d 44; *Retamal v Osborne Mem. Home Assn.*, 256 AD2d 506; *Fox v Brozman-Archer Realty Servs.*, 266 AD2d 97; *Bauer v Female Academy of Sacred Heart*, 97 NY2d 445; *Ojeda v Peak Janitorial Servs.*, 270 AD2d 322; *Aviles v Crystal Mgt.*, 233 AD2d 129.) II. If the Appellate Division disqualified plaintiff from coverage because he was not cleaning windows, then the Court misread the holding in *Dahar v Holland Ladder & Mfg. Co.* (18 NY3d 521 [2012]). (*Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Robinson Motor Xpress, Inc. v HSBC Bank, USA*, 37 AD3d 117; *Vasey v Pyramid Co. of Buffalo*, 258 AD2d 906; *Kapovic v 450 Lexington Venture*, 280 AD2d 321; *Roldan v Molyneux*, 227 AD2d 240; *Chapman v International Bus. Machs. Corp.*, 253 AD2d 123; *Cabri v ICOS Corp. of Am.*, 240 AD2d 456; *Ekere v Airmont Indus. Park*, 249 AD2d 104; *Parraguirre v 27th St. Holding, LLC*, 71 AD3d 594; *Vernum v Zilka*, 241 AD2d 885.) III. This Court's decision in *Dahar v Holland Ladder & Mfg. Co.* (18 NY3d 521 [2012]) has created confusion in the Appellate Division, and the instant case should be utilized as a vehicle to eliminate that confusion. (*Grant v Steve Mark, Inc.*, 96 AD3d 614.)

*Mauro Lilling Naparty LLP*, Woodbury (*Anthony F. DeStefano* and *Caryn L. Lilling* of counsel), for respondents. I. Routine custodial maintenance is not a type of "cleaning" protected by the "scaffold" law. (*Grant v Steve Mark, Inc.*, 96 AD3d 614; *Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521; *Broggy v Rockefeller Group, Inc.*, 8 NY3d 675; *Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Swiderska v New York Univ.*, 10 NY3d 792; *Runner v New York Stock Exch., Inc.*, 13 NY3d 599; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259; *Smith v Shell Oil Co.*, 85 NY2d 1000; *Izrailev v Ficarra Furniture of Long Is.*, 70 NY2d 813.) II. This Court did not wholesale overrule *Broggy v Rockefeller Group, Inc.* (8 NY3d 675 [2007]) but merely reminded litigants that its holding is limited to commercial window cleaning. (*Brown v Christopher St. Owners Corp.*, 87 NY2d 938; *Dahar v Holland Ladder & Mfg. Co.*, 18 NY3d 521.)

## OPINION OF THE COURT

GRAFFEO, J.

Plaintiff, an employee of a commercial cleaning company hired to provide janitorial services for a retail store, was injured when he fell from a four-foot-tall ladder while dusting a six-foot-high display shelf. He brought a Labor Law § 240 (1) action against J. Crew, the retail store, and The Mercer I L.L.C., the building owner. Both lower courts held that defendants were entitled to summary judgment because the activity plaintiff was engaged in at the time of his fall was not the type of "cleaning" covered by Labor Law § 240 (1). Because we agree, we now affirm.

Defendant J. Crew hired Whelan Cleaning Services to provide custodial services at a retail store located in Lower Manhattan. Whelan assigned plaintiff Jose Soto responsibility for daily maintenance of the store. Each day, Soto would report for work several hours before the establishment opened to ready the premises for business, vacuuming, mopping, cleaning bathrooms, emptying garbage and the like. After the store opened, and for the remainder of his shift, he did spot cleaning, tidying shelves, dusting, wiping down the entrance door, sweeping up debris and scraping gum from the floor, as necessary.

On the day of the incident, a J. Crew employee noticed that a six-foot-high wooden shelf used to display clothing was dusty and she asked Soto to clean it. Equipped with a "high duster" (a Swiffer duster with a long handle), Soto—who is five feet, 10 inches tall—positioned a four-foot-high A-frame ladder on the

floor in front of the shelf. It is undisputed that the ladder was in proper working order and that Soto locked it in the open position prior to climbing the steps. As he was dusting the shelf, however, both Soto and the ladder fell over, allegedly causing Soto to injure his back, knee and elbow.

Soto commenced this personal injury action against J. Crew and the building owner seeking recovery under Labor Law § 240 (1), among other theories. After discovery, defendants moved for summary judgment, asserting that Soto's cleaning activities constituted "routine maintenance" and not the type of cleaning protected by the statute. They further contended that, even if Soto had been engaged in a covered activity, he failed to establish that he was necessarily exposed to an elevation-related risk or that the ladder was defective or inappropriate to the assigned task. Alternatively, defendants noted that Soto was an insulin-dependent diabetic with other health conditions that might have contributed to the fall and that further discovery was warranted to ascertain the extent to which the fall could be attributed to his medical conditions.

Soto opposed the motions and cross-moved for partial summary judgment on liability on the Labor Law § 240 (1) claim. He argued that the statute applied because he was engaged in "cleaning" and was required to dust a shelf at an elevated level, contending that all commercial cleaning is covered by the statute. He also submitted the affidavit of an engineer who opined that Soto was not provided with proper protection for his elevated work because the ladder was not secured in some manner, such as being held by another store employee.

Supreme Court denied Soto's cross motion and granted summary judgment to defendants dismissing the Labor Law § 240 (1) claim, reasoning that the statute does not apply to workers employed on a daily basis to conduct routine commercial cleaning, such as the dusting, sweeping, mopping and general tidying at issue here (2011 NY Slip Op 32518[U] [2011]). The Appellate Division unanimously affirmed in two separate writings (95 AD3d 721 [1st Dept 2012]). In a memorandum, the majority held that "[t]he dusting of the shelf constituted routine maintenance and was not the type of activity that is protected under the statute" (*id.* at 721). The concurrence agreed that dismissal of the claim was required on constraint of this Court's then-recent decision in *Dahar v Holland Ladder & Mfg. Co.* (18 NY3d 521 [2012]), which denied recovery to a manufacturing-plant employee injured while cleaning a large wall module at the

conclusion of the manufacturing process. The Appellate Division granted Soto leave to appeal to this Court (2012 NY Slip Op 85967[U] [2012]).

Labor Law § 240 (1) imposes a nondelegable duty and absolute liability upon owners and contractors for failing to provide safety devices necessary for workers subjected to elevation-related risks in circumstances specified by the statute (*see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). To recover, the plaintiff must have been engaged in a covered activity—"the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (Labor Law § 240 [1]; *see Panek v County of Albany*, 99 NY2d 452, 457 [2003])—and must have suffered an injury as "the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). The threshold issue presented in this appeal concerns the first question—whether Soto was engaged in "cleaning" within the meaning of the statute.

Prior to our 2007 decision in *Broggy v Rockefeller Group, Inc.* (8 NY3d 675 [2007]), there were several appellate decisions holding that cleaning activities were covered under the statute only if they were performed in connection with building construction, demolition, repair work or comparable activities that made a significant physical change to the premises. This conclusion was understandable given that the primary legislative concern underlying Labor Law § 240 (1) was the protection of construction workers who often face significant elevation-related dangers on a work site, even when engaged in a task that would not be particularly hazardous if performed in a different context. We nonetheless rejected that view in *Broggy*, noting that "cleaning" is separately listed as a covered activity and had been "expressly afforded protection under section 240 (1) whether or not incidental to any other enumerated activity" (*id.* at 680). There, plaintiff had been tasked with cleaning the 9- or 10-foot-tall interior windows of a commercial building. Noting that we had previously held that cleaning the exterior of the windows of a commercial or public building is a covered activity (*see Bauer v Female Academy of Sacred Heart*, 97 NY2d 445 [2002]), we saw no basis to distinguish the cleaning of interior windows for Labor Law § 240 (1) purposes. Viewing the statute in the context of the larger legislative scheme, it would have been anomalous for the legislature to categorically exclude

commercial window washers given the elevation-related risks they typically encounter and the special protection they have long enjoyed under the Labor Law (*see* Labor Law § 202 [imposing a duty to "provide . . . safe means for the cleaning of the windows and of exterior surfaces" of public buildings]).

We went on to hold in *Broggy* that the complaint had properly been dismissed because plaintiff failed to surmount the second Labor Law § 240 (1) hurdle that required proof in admissible form that the task he had been assigned necessarily created "an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against" (*id.* at 681). Although plaintiff had fallen from a desk that he stood on while engaged in the assigned job, there was no indication in the record that the tools he had been supplied (a squeegee and a wand) were not long enough to permit him to wash the windows while standing on the floor. He therefore failed to establish that it was necessary for him to work at an elevated level to complete the task.

In *Swiderska v New York Univ.* (10 NY3d 792 [2008]), another window washing case, we applied the analysis in *Broggy* to determine that a plaintiff injured when she fell off a bed that she had climbed on to clean the interior windows of a dormitory as part of a commercial cleaning project was engaged in an activity covered by Labor Law § 240 (1). In contrast to *Broggy*, there plaintiff had been equipped with only cleaning solution and a rag to clean 10-foot-high windows, "which required her to climb upon pieces of furniture in order to complete her work—creating an elevation-related risk—and she was not provided a ladder, scaffold or other safety device" (*Swiderska*, 10 NY3d at 793).

These commercial window washing cases formed the backdrop for our decision in *Dahar* (18 NY3d 521) where a manufacturing plant employee was injured when he fell from a ladder while cleaning oil and welding residue from a custom fabricated wall module at the completion of the manufacturing process. Defendants in that case argued, among other defenses, that this type of cleaning was not covered by Labor Law § 240 (1). We agreed, emphasizing that the statute had never been extended so far and that inclusion of this activity within its scope would greatly expand its reach. In dicta, we commented that, if given the broad reading urged by plaintiff, the statute would encompass virtually every kind of cleaning task, including every bookstore employee who climbs a ladder to dust off a bookshelf or every maintenance worker who climbs to a height to clean a light fixture—results never intended by the legislature.

This case presents a scenario analogous to the bookstore example cited in *Dahar* and, consistent with our analysis in that case, we conclude that plaintiff was not engaged in a covered activity. Although commercial window washing constitutes "cleaning" within the ambit of Labor Law § 240 (1) for the reasons explained above, we have nonetheless clarified that "routine, household window washing" does not (*see Brown v Christopher St. Owners Corp.*, 87 NY2d 938, 939 [1996]; *Connors v Boorstein*, 4 NY2d 172 [1958]). Routine maintenance of that type has been deemed excluded from the statute in recognition of the fact that such a task generally does not involve the type of heightened elevation-related risks that justify extension of the provision's special protection.

To be sure, the term "cleaning" is not confined merely to commercial window washing—our courts have reasonably applied Labor Law § 240 (1) to other types of cleaning projects that present hazards comparable in kind and degree to those presented on a construction site (*see e.g. Vasey v Pyramid Co. of Buffalo*, 258 AD2d 906 [4th Dept 1999] [cleaning of 35- and 40-foot-high miniledges and bulkheads in Galleria Mall as part of large-scale cleaning project was a covered activity]; *Fox v Brozman-Archer Realty Servs.*, 266 AD2d 97 [1st Dept 1999] [power washing of plexiglass canopy of building in furtherance of contract to clean exterior of entire structure was a covered activity]; *see generally Gordon v Eastern Ry. Supply*, 82 NY2d 555 [1993] [use of sandblaster to clean exterior of railroad car]). But we reject plaintiff's argument that the legislature intended to cover all cleaning that occurs in a commercial setting, no matter how mundane.

Outside the sphere of commercial window washing (which we have already determined to be covered), an activity cannot be characterized as "cleaning" under the statute, if the task: (1) is routine, in the sense that it is the type of job that occurs on a daily, weekly or other relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises; (2) requires neither specialized equipment or expertise, nor the unusual deployment of labor; (3) generally involves insignificant elevation risks comparable to those inherent in typical domestic or household cleaning; and (4) in light of the core purpose of Labor Law § 240 (1) to protect construction workers, is unrelated to any ongoing construction, renovation, painting, alteration or repair project. Whether the activity is "cleaning" is an issue for the court to decide after reviewing all

of the factors. The presence or absence of any one is not necessarily dispositive if, viewed in totality, the remaining considerations militate in favor of placing the task in one category or the other.

Applying these factors here, the activity undertaken by Soto was not "cleaning" within the meaning of Labor Law § 240 (1). The dusting of a six-foot-high display shelf is the type of routine maintenance that occurs frequently in a retail store. It did not require specialized equipment or knowledge and could be accomplished by a single custodial worker using tools commonly found in a domestic setting. Further, the elevation-related risks involved were comparable to those encountered by homeowners during ordinary household cleaning and the task was unrelated to a construction, renovation, painting, alteration or repair project. Because plaintiff was not engaged in an activity that fell within the purview of Labor Law § 240 (1), we need not address whether he offered sufficient evidence that he was injured as a consequence of "a failure to provide adequate protection against a risk arising from a physically significant elevation differential" under our analysis in *Runner*. Defendants were therefore entitled to summary judgment dismissing the Labor Law § 240 (1) claim, as both lower courts concluded.

Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order affirmed, with costs, and certified question not answered upon the ground that it is unnecessary.