Healy v Est Downtown, LLC (2021 NY Slip Op 00699)





Healy v Est Downtown, LLC


2021 NY Slip Op 00699


Decided on February 5, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


655 CA 19-01403

[*1]JAMES HEALY, PLAINTIFF-RESPONDENT,
v
EST DOWNTOWN, LLC, C/O FIRST AMHERST DEVELOPMENT GROUP, DEFENDANT-APPELLANT. (APPEAL NO. 2.) 






LAW OFFICES OF JOHN WALLACE, BUFFALO (JAMES J. NAVAGH OF COUNSEL), FOR DEFENDANT-APPELLANT. 
DOLCE PANEPINTO, P.C., BUFFALO (JONATHAN M. GORSKI OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an amended order of the Supreme Court, Erie County (Frank A. Sedita, III, J.), entered July 22, 2019. The amended order denied in part defendant's motion for summary judgment and granted plaintiff's motion for partial summary judgment. 
It is hereby ORDERED that the amended order so appealed from is affirmed without costs.
Memorandum: Plaintiff commenced this action to recover damages under, inter alia, Labor Law § 240 (1) for injuries he sustained while working at a mixed-use property (building) owned by defendant. Defendant thereafter moved for summary judgment seeking dismissal of the complaint, and plaintiff moved for, inter alia, summary judgment with respect to liability on the Labor Law § 240 (1) cause of action. As relevant on appeal, Supreme Court denied defendant's motion to the extent that it sought dismissal of the Labor Law § 240 (1) cause of action and granted plaintiff's motion to the extent that it sought a determination of liability under the Labor Law § 240 (1) cause of action. Defendant now appeals, and we affirm.
At all relevant times, plaintiff was employed as a maintenance and repair technician by the building's property manager. The building's maintenance staff, of which plaintiff was a member, was separate from its janitorial staff. Plaintiff's regular duties included making the building's rental properties ready for incoming tenants by, inter alia, repairing fixtures and painting. Additionally, he was tasked with responding to work orders generated by his employer in response to defendant's requests for repairs.
On the day of the accident, plaintiff responded to a "[p]est [c]ontrol" work order filed by one of the building's commercial tenants. Specifically, the work order complained that birds were depositing excrement from a nest that was lodged in one of the building's gutters located above the tenant's entryway. Plaintiff was injured when, while attempting to remove the bird's nest, he fell from an unsecured eight-foot ladder that moved when a bird suddenly flew out of the nest.
Defendant contends that it is entitled to summary judgment dismissing the Labor Law § 240 (1) cause of action, and that plaintiff is not entitled to partial summary judgment with respect to liability on that cause of action, because plaintiff was not engaged in an activity protected by the statute at the time of the accident. We reject defendant's contention inasmuch as the parties' submissions establish, as a matter of law, that plaintiff was engaged in a protected activity under section 240 (1), i.e., cleaning, when he fell.
Labor Law § 240 (1) applies to various "types of cleaning projects" (Soto v J. Crew, Inc., [*2]21 NY3d 562, 568 [2013]), whether or not the cleaning project is "incidental to any other enumerated activity" (Broggy v Rockefeller Group, Inc., 8 NY3d 675, 680 [2007]). However, other than commercial window cleaning, which is afforded protection under the statute, "an activity cannot be characterized as 'cleaning' under the statute, if the task: (1) is routine, in the sense that it is the type of job that occurs on a daily, weekly or other relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises; (2) requires neither specialized equipment or expertise, nor the unusual deployment of labor; (3) generally involves insignificant elevation risks comparable to those inherent in typical domestic or household cleaning; and (4) in light of the core purpose of Labor Law § 240 (1) to protect construction workers, is unrelated to any ongoing construction, renovation, painting, alteration or repair project" (Soto, 21 NY3d at 568). "Whether the activity is 'cleaning' is an issue for the court to decide after reviewing all of the factors. The presence or absence of any one [factor] is not necessarily dispositive if, viewed in totality, the remaining considerations militate in favor of placing the task in one category or the other" (id. at 568-569; see Pena v Varet & Bogart, LLC, 119 AD3d 916, 917 [2d Dept 2014]).
Here, plaintiff's work in removing the bird's nest from one of the building's gutters was not routine cleaning. Plaintiff had never before been given such a task during his time working on the premises. Indeed, the reason for removing the nest was, in part, to prevent the further accumulation of bird excrement under the nest. Plaintiff's supervisor characterized the task of removing the nest as nonroutine cleaning. In addition, removing the bird's nest from the gutter, which was located above the tenant's entry door, necessarily involved elevation-related risks that are not generally associated with typical household cleaning (see generally Soto, 21 NY3d at 568; Pena, 119 AD3d at 917-918; Collymore v 1895 WWA, LLC, 113 AD3d 720, 721 [2d Dept 2014]). Although plaintiff's work did not necessitate the use of specialized equipment or expertise, nor was it performed in conjunction with any construction, renovation or repair project on the building (see Soto, 21 NY3d at 568), those factors are not dispositive in light of the atypical nature of the work and its attendant elevation-related risks and, moreover, the fact that plaintiff's task involved the removal of extraneous materials that had formed in the gutter not due to its normal operation (see Vernum v Zilka, 241 AD2d 885, 885-886 [3d Dept 1997]; cf. Soto, 21 NY3d at 568-569; see also Wicks v Trigen-Syracuse Energy Corp., 64 AD3d 75, 79 [4th Dept 2009]).
Contrary to the position of our dissenting colleagues, in Soto, the Court of Appeals elucidated specific facts about the plaintiff's routine work functions in that case that render it distinguishable. There, the plaintiff was employed by a custodial services contractor providing janitorial services for a retail store (Soto, 21 NY3d at 564). His daily work functions centered on cleaning the store, including, in particular, dusting the store after it opened (id.). The plaintiff in Soto was injured while engaged in that routine dusting (id. at 565). Here, in contrast, plaintiff was injured while performing a function that was not part of his regular maintenance and repair responsibilities. Indeed, as the dissent acknowledges, it is undisputed that plaintiff had never been directed to remove a bird's nest from a gutter before.
Distilled to its essence, the dissent's analysis of the Soto factors and resulting conclusion that plaintiff's work "did not constitute the type of 'cleaning' covered by Labor Law § 240 (1)" effectively create a categorical rule that clearing extraneous material from gutters always constitutes an activity excluded from the scope of "cleaning" under Labor Law § 240 (1). In our view, the totality of the circumstances here establishes that plaintiff was engaged in protected, nonroutine cleaning at the time of the accident (cf. Soto, 21 NY3d at 569). In reaching our conclusion, we are mindful that "[t]he statute is to be interpreted liberally to accomplish its purpose" (Striegel v Hillcrest Hgts. Dev. Corp., 100 NY2d 974, 977 [2003]). In light of our determination, we need not consider whether plaintiff's work constituted "repairing" under section 240 (1).
We have considered defendant's remaining contentions and conclude that they do not require modification or reversal of the amended order.
All concur except Peradotto and Lindley, JJ., who dissent and vote to modify in accordance with the following memorandum: We respectfully dissent because, contrary to the majority's conclusion, plaintiff was not engaged in cleaning or any other protected activity under Labor Law § 240 (1) at the time of the accident.
Although, as the majority recognizes, "Labor Law § 240 (1) is to be construed as liberally as necessary to accomplish the purpose of protecting workers" (Wicks v Trigen-Syracuse Energy Corp., 64 AD3d 75, 78 [4th Dept 2009]; see Martinez v City of New York, 93 NY2d 322, 325-326 [1999]), "the language of Labor Law § 240 (1) 'must not be strained' to accomplish what the [l]egislature did not intend" (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 292 [2003], quoting Martinez, 93 NY2d at 326; see Preston v APCH, Inc., 175 AD3d 850, 852 [4th Dept 2019], affd 34 NY3d 1136 [2020]). Thus, while it is settled law that " 'cleaning' is expressly afforded protection under section 240 (1) whether or not incidental to any other enumerated activity" (Broggy v Rockefeller Group, Inc., 8 NY3d 675, 680 [2007]), the Court of Appeals has cautioned that it has "not extended the statute's coverage [of 'cleaning'] to every activity that might fit within its literal terms" (Dahar v Holland Ladder & Mfg. Co., 18 NY3d 521, 526 [2012]) and that the legislature did not intend "to cover all cleaning that occurs in a commercial setting, no matter how mundane" (Soto v J. Crew Inc., 21 NY3d 562, 568 [2013]). Instead, consistent with the purpose of the statute, the protected activity of " 'cleaning' " may reasonably be applied to the "types of cleaning projects that present hazards comparable in kind and degree to those presented on a construction site" (id.; see Dahar, 18 NY3d at 523-526).
In light of those principles, the Court of Appeals, framing the test in exclusionary terms, has stated that "an activity cannot be characterized as 'cleaning' under the statute, if the task: (1) is routine, in the sense that it is the type of job that occurs on a daily, weekly or other relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises; (2) requires neither specialized equipment or expertise, nor the unusual deployment of labor; (3) generally involves insignificant elevation risks comparable to those inherent in typical domestic or household cleaning; and (4) in light of the core purpose of Labor Law § 240 (1) to protect construction workers, is unrelated to any ongoing construction, renovation, painting, alteration or repair project" (Soto, 21 NY3d at 568). "Whether the activity is 'cleaning' is an issue for the court to decide after reviewing all of the factors. The presence or absence of any one [factor] is not necessarily dispositive if, viewed in totality, the remaining considerations militate in favor of placing the task in one category or the other" (id. at 568-569).
Here, plaintiff's task involved standing on a stepladder approximately five feet above the ground in order to remove extraneous material in the form of a bird's nest from a gutter located slightly below a hard canopy over the entrance to a first story retail storefront. The nest had been formed in a hole in the gutter underneath a watertight membrane that had been installed as part of prior work by a roofing company to fix the then-leaking gutter. Applying the requisite factors, we conclude that the activity undertaken by plaintiff was not "cleaning" within the meaning of Labor Law § 240 (1).
By narrowly focusing on whether plaintiff had ever removed a bird's nest from a gutter while working on the premises and the supervisor's characterization of the work, the majority has misconstrued and misapplied the first factor. Although plaintiff himself may not have personally removed a bird's nest from a gutter before, and although the supervisor characterized "any type of gutter cleaning" as "non-routine" for his staff, those facts, while perhaps informative, are nevertheless not determinative. After all, the Court of Appeals in Soto did not refer in its analysis of this factor to any specific facts adduced regarding the particular frequency with which the janitorial worker in that case was tasked during his employment with dusting shelves in the retail store; rather, the Court applied the first factor in generic, passive terms related to the nature of the task itself: "The dusting of a six-foot-high display shelf is the type of routine maintenance that occurs frequently in a retail store" (21 NY3d at 569 [emphasis added]).
Likewise, here, the clearing of gutters of extraneous material—whether leaves, other debris or, in this case, a bird's nest—in order to keep the storefronts thereunder clean and safe "is the type of job that occurs on a . . . relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises" (id. at 568 [emphasis added]; see generally Leathers v Zaepfel Dev. Co., Inc. [appeal No. 2], 121 AD3d 1500, 1503 [4th Dept 2014], lv denied 24 NY3d 917 [2015]; Hull v Fieldpoint Community Assn., Inc., 110 AD3d 961, 962 [2d Dept 2013], lv denied 22 NY3d 862 [2014]; Berardi v Coney Is. Ave. Realty, LLC, 31 AD3d 590, 591 [2d Dept 2006]). Indeed, contrary to the majority's assertion, the record establishes that the task fell directly within the scope of plaintiff's ordinary work as a maintenance and repair technician to, as plaintiff testified at his deposition, "take care of the daily grounds" and complete "any work orders that would come in," and was not outside the scope of those routine tasks such [*3]that a subcontractor would be required. We thus conclude that clearing a gutter of extraneous material over the entrance to a first story retail storefront is the type of routine maintenance that occurs on a relatively frequent basis on a commercial portion of a mixed use property (see Soto, 21 NY3d at 569).
We agree with the majority with respect to the second factor that the removal of the bird's nest did not necessitate the use of any specialized equipment or expertise, nor did such removal require the unusual deployment of labor, inasmuch as the task involved a single worker using a common ladder in an attempt to remove extraneous material from the gutter by hand (see id.).
We further disagree, however, with the majority's application of the third factor, and we note that the majority leaves unstated the actual elevation from which plaintiff fell. The activity at issue here involved an insignificant elevation risk comparable to those inherent in typical domestic or household cleaning (see id. at 568-569). As the Court of Appeals has recounted, it commented in Dahar that, "if given the broad reading urged by [the] plaintiff, the statute would encompass virtually every kind of cleaning task, including every bookstore employee who climbs a ladder to dust off a bookshelf or every maintenance worker who climbs to a height to clean a light fixture—results never intended by the legislature" (Soto, 21 NY3d at 567; see Dahar, 18 NY3d at 526). In the case before us, plaintiff's task of standing on a stepladder approximately five feet above the ground in order to remove extraneous material from a gutter located slightly below a hard canopy over the entrance to a retail storefront "presents a scenario analogous to the bookstore [and light fixture] example[s] cited in Dahar," and is akin to the injured janitorial worker's task in Soto of standing on a four-foot-tall ladder in order to dust a six-foot-high display shelf (Soto, 21 NY3d at 568; see Dahar, 18 NY3d at 523-526; cf. Pena v Varet & Bogart, LLC, 119 AD3d 916, 916 [2d Dept 2014]). In other words, the "elevation-related risks involved [here] were comparable to those encountered by homeowners during ordinary household cleaning," such as dusting the top of shelving or upper kitchen cabinetry or wiping down a ceiling-mounted fixture (Soto, 21 NY3d at 569).
We agree with the majority with respect to the fourth factor that plaintiff's task was "unrelated to any ongoing construction, renovation, painting, alteration or repair project" (id. at 568). Even crediting plaintiff's testimony that the removal of the bird's nest was a necessary step in a larger task of patching the hole in the gutter, mention of which was absent from the contemporaneously prepared work order and incident report, we reject plaintiff's contention that such task constituted alteration or repair work. Patching a single, six-inch hole with a piece of sheet metal and silicone adhesive as proposed by plaintiff would not require "a significant physical change to the configuration or composition of the building or structure" and, therefore, such work could not constitute an alteration (Joblon v Solow, 91 NY2d 457, 465 [1998]; see Azad v 270 5th Realty Corp., 46 AD3d 728, 729-730 [2d Dept 2007], lv denied 10 NY3d 706 [2008]). Nor would patching the hole constitute repair work rather than routine maintenance inasmuch as the gutter, by plaintiff's own admission, was operable and not leaking given the prior installation of the membrane, and plaintiff's proposed "attachment of [a] metal sheet[] over the hole[] in the gutter . . . was in the nature of component replacement" necessitated by normal wear and tear (Azad, 46 AD3d at 730; see generally Esposito v New York City Indus. Dev. Agency, 1 NY3d 526, 528 [2003]). Contrary to plaintiff's further contention, even if the roofing company's prior installation of the membrane lining the gutter constituted a repair or alteration, plaintiff's attempt to remove the bird's nest and patch the hole was unrelated to the roofing company's project, which had already been completed by successfully stopping water from leaking through the use of the membrane in lieu of patching any holes in the gutter (see Soto, 21 NY3d at 568-569).
In view of the above discussion, the majority's mischaracterization of our analysis of the Soto factors as employing a categorical rule that gutter clearing of any type necessarily falls outside the protected activity of "cleaning" under Labor Law § 240 (1) merely serves to further reveal the flaws in the majority's analysis.
Based on the foregoing review of the requisite factors, we conclude that, as in Soto and Dahar, the task here did not constitute the type of "cleaning" covered by Labor Law § 240 (1). Moreover, for the reasons previously discussed, plaintiff was not performing alteration or repair work. Defendant thus met its initial burden on its motion for summary judgment dismissing the complaint with respect to the section 240 (1) cause of action by establishing that plaintiff was not [*4]engaged in a protected activity under the statute, and plaintiff failed to raise a triable issue of fact in that regard and failed to meet his initial burden on his motion with respect to liability on that cause of action. We would therefore modify the amended order by denying that part of plaintiff's motion seeking summary judgment with respect to liability on the section 240 (1) cause of action, granting defendant's motion for summary judgment in its entirety, and dismissing the complaint.
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court