Rogers v DS Restoration & Residential Servs. Co. (2026 NY Slip Op 00725)

Rogers v DS Restoration & Residential Servs. Co.

2026 NY Slip Op 00725

Decided on February 11, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, GREENWOOD, NOWAK, AND HANNAH, JJ.

931 CA 24-01480

[*1]ADRIAN ROGERS, PLAINTIFF-RESPONDENT,
vDS RESTORATION & RESIDENTIAL SERVICES CO., LENARD C. DABNEY, DEFENDANTS-APPELLANTS, ET AL., DEFENDANT. (APPEAL NO. 1.) 

RUPP PFALZGRAF LLC, BUFFALO (JILL R. ALLEN OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
O'BRIEN & FORD, P.C., BUFFALO (CHRISTOPHER M. PANNOZZO OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Raymond W. Walter, J.), entered September 4, 2024, in a Labor Law and common-law negligence action. The order, among other things, denied the motion of defendants DS Restoration & Residential Services Co. and Lenard C. Dabney for summary judgment dismissing plaintiff's complaint against them. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting the motion of defendants DS Restoration & Residential Services Co. and Lenard C. Dabney in part and dismissing the Labor Law § 241 (6) cause of action against them except insofar as it is premised on the alleged violation of 12 NYCRR 23-1.21 (b) (4) (iv), and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking to recover damages for injuries he sustained when he fell from a ladder while cleaning gutters on a residential home. DS Restoration & Residential Services Co. and Lenard C. Dabney (defendants) moved for summary judgment dismissing the complaint and all cross-claims against them. Supreme Court, inter alia, denied that motion, and defendants now appeal.
We reject defendants' contention that the court erred in denying that part of their motion with respect to the Labor Law § 240 (1) cause of action. "Labor Law § 240 (1) imposes a nondelegable duty and absolute liability upon owners and contractors for failing to provide safety devices necessary for workers subjected to elevation-related risks in circumstances specified by the statute" (Soto v J. Crew Inc., 21 NY3d 562, 566 [2013]). "To recover, the plaintiff must have been engaged in a covered activity—'the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure' " (id., quoting § 240 [1]).
First, contrary to defendants' contention, they did not establish as a matter of law that they were not contractors within the meaning of the statute. "An entity is a contractor within the meaning of Labor Law § 240 (1) and § 241 (6) if it had the power to enforce safety standards and choose responsible subcontractors" (Stiegman v Barden & Robeson Corp. [appeal No 2], 162 AD3d 1694, 1697 [4th Dept 2018] [internal quotation marks omitted]; see Prevost v Associated Materials, LLC, 239 AD3d 1235, 1236-1237 [4th Dept 2025]). "[T]he core inquiry is whether the defendant had the authority to supervise or control the activity bringing about the injury so as to enable it to avoid or correct the unsafe condition" (Stiegman, 162 AD3d at 1697 [internal quotation marks omitted]; see Prevost, 239 AD3d at 1237). Defendants' "status as contractors is dependent on their right to exercise control, not whether they in fact did so" (Barker v Union Corrugating Co., 187 AD3d 1544, 1546 [4th Dept 2020] [internal quotation marks omitted]).
Here, defendants submitted evidence that the property owner, i.e., defendant Renee Pokszywka, hired defendants to work on the gutters. They also submitted plaintiff's deposition, wherein he testified that Dabney asked him if he could assist Dabney with the job. Although there was no written contract between them, plaintiff testified that there was a verbal agreement similar to prior jobs where Dabney would pay plaintiff in cash for his work. We conclude that there is a triable issue of fact whether defendants had the authority to exercise control over the work and were contractors within the meaning of the statute (see generally id.; Rauls v DirecTV, Inc., 113 AD3d 1097, 1098-1099 [4th Dept 2014]).
Second, contrary to defendants' contention, they did not establish as a matter of law that plaintiff was not engaged in activity covered by the statute. Defendants contend that the work constituted routine maintenance, which is not a covered activity, whereas plaintiff contends that the work constituted repair, which is a covered activity. " '[I]t is well settled that the statute does not apply to routine maintenance in a non-construction, non-renovation context' " (Ozimek v Holiday Val., Inc., 83 AD3d 1414, 1415 [4th Dept 2011]; see Esposito v New York City Indus. Dev. Agency, 1 NY3d 526, 528 [2003]). "Whether a particular activity constitutes a 'repair' or routine maintenance must be decided on a case-by-case basis, depending on the context of the work" (Dos Santos v Consolidated Edison of N.Y., Inc., 104 AD3d 606, 607 [1st Dept 2013]; see Pieri v B & B Welch Assoc., 74 AD3d 1727, 1728 [4th Dept 2010]). "[D]elin[e]ating between routine maintenance and repairs is frequently a close, fact-driven issue . . . , and [t]hat distinction depends upon whether the item being worked on was inoperable or malfunctioning prior to the commencement of the work . . . , and whether the work involved the replacement of components damaged by normal wear and tear" (Cullen v AT & T, Inc., 140 AD3d 1588, 1589 [4th Dept 2016] [internal quotation marks omitted]; see Esposito, 1 NY3d at 528; Wolfe v Wayne-Dalton Corp., 133 AD3d 1281, 1282 [4th Dept 2015]).
We conclude that defendants did not meet their initial burden inasmuch as the evidence submitted in support of their motion raises triable issues of fact whether plaintiff was engaged in repair or routine maintenance. The evidence, including the deposition testimony of Pokszywka and Dabney, established that Pokszywka, who thought that there may be birds nesting behind the gutter, hired defendants to work on the gutter. Both Pokszywka and Dabney testified that the work consisted primarily of cleaning the gutters, and Dabney testified that when he discovered a hole in the fascia board, he left the worksite to purchase a piece of flashing to cover the hole, which would not entail removing the gutter. While he was away from the worksite, plaintiff climbed the ladder to continue cleaning the gutter and fell when birds stirred in the hole and he shifted his weight to the left, which caused the ladder to slide and plaintiff to fall. Defendants also submitted the affidavit of their expert engineer, who opined that "[t]he hole or space at the top of the fascia board is a common issue caused by normal wear and tear."
In further support of their motion, however, defendants submitted the deposition testimony of plaintiff, who testified that the cleaning work was incidental to more extensive repair work. He explained that the work entailed cleaning the gutter, removing the gutter, removing and replacing the fascia board, and then reinstalling the gutter. Moreover, even assuming, arguendo, that defendants met their initial burden, we conclude that plaintiff raised a triable issue of fact in opposition. Plaintiff's expert engineer opined that the hole in the area of the soffit and fascia was not the result of normal wear and tear considering that the roof was less than 10 years old, and further opined that the most common reasons for soffit and fascia rot are improper installation of drip edges and gutters. He opined that those types of repairs to areas of rot require the clearing out of rotted wood and installation of new wood, which is more extensive than simple maintenance. We conclude that there is a triable issue of fact whether plaintiff was engaged in routine maintenance by installing flashing to a hole that developed due to normal wear and tear (see Azad v 270 5th Realty Corp., 46 AD3d 728, 729-730 [2d Dept 2007], lv denied 10 NY3d 706 [2008]), or whether the work being performed by plaintiff at the time of the accident was necessary to restore the proper functioning of the roof and gutter (see Verhoef v Dean, 233 AD3d 1491, 1491-1492 [4th Dept 2024]; Davidson v Ambrozewicz, 12 AD3d 902, 902-903 [3d Dept 2004]).
Third, contrary to defendants' contention, they failed to establish that Labor Law § 240 (1) was not violated. It is well settled that "evidence that [a] ladder was structurally sound and not defective 'is not relevant on the issue of whether it was properly placed' " (Calloway v American Park Place, Inc., 221 AD3d 1473, 1474 [4th Dept 2023]; see Petit v Board of Educ. of [*2]W. Genesee School Dist., 307 AD2d 749, 749-750 [4th Dept 2003]). In support of their motion, defendants submitted the deposition of plaintiff, who testified that the ladder shifted or slid when he leaned his weight to the left. Defendants also failed to meet their initial burden of establishing that plaintiff was the sole proximate cause of his injuries (see Verdugo v Fox Bldg. Group, Inc., 218 AD3d 1179, 1180 [4th Dept 2023]; see also Harris v Tesmer Bldrs., Inc., 197 AD3d 911, 912 [4th Dept 2021]).
We reject defendants' contention that the court erred in denying that part of their motion with respect to the Labor Law § 241 (6) cause of action to the extent it is based upon an alleged violation of 12 NYCRR 23-1.21 (b) (4) (iv). That regulation provides that, "[w]hen work is being performed from ladder rungs between 6 and 10 feet above the ladder footing, a leaning ladder shall be held in place by a person stationed at the foot of such ladder unless the upper end of such ladder is secured against side slip by its position or by mechanical means. When work is being performed from rungs higher than 10 feet above the ladder footing, mechanical means for securing the upper end of such ladder against side slip are required and the lower end of such ladder shall be held in place by a person unless such lower end is tied to a secure anchorage or safety feet are used" (12 NYCRR 23-1.21 [b] [4] [iv]).
Here, defendants failed to meet their initial burden of establishing that they did not violate the regulation, that the regulation was not applicable to the facts of this case, or that such violation was not a proximate cause of plaintiff's injuries (see Babiack v Ontario Exteriors, Inc., 106 AD3d 1448, 1449-1450 [4th Dept 2013]; Piazza v Frank L. Ciminelli Constr. Co., Inc., 2 AD3d 1345, 1349 [4th Dept 2003]). In support of their motion, defendants submitted the opinion of their expert that the regulation was not violated because the top of the ladder was secured against side slip by mechanical means, i.e., a stand-off stabilizer, and the bottom of the ladder had safety feet. Defendants, however, also submitted the deposition of plaintiff, who testified that the rubber boot on a stabilizer leg was missing. Plaintiff further testified that the purpose of the boot was to "help protect the house, and then the ridges are for the stability so that it has grip." Defendants' expert provided only an equivocal opinion, stating that "[a] single missing boot would not appreciably change the stability and safety of the standoff on a properly placed ladder in a stable environment when utilized by a person exercising reasonable safety practices" (emphasis added). We note that plaintiff has abandoned his reliance on all other regulations in his bill of particulars by failing to address them either in the motion court or on appeal (see Fladd v Installed Bldg. Prods., LLC, 134 AD3d 1480, 1482 [4th Dept 2015]). We therefore modify the order accordingly (see Alati v Divin Bldrs., Inc., 137 AD3d 1577, 1579 [4th Dept 2016]; Smith v Nestle Purina Petcare Co., 105 AD3d 1384, 1386 [4th Dept 2013]).
We reject defendants' contention that the court erred in denying that part of their motion with respect to the Labor Law § 200 and common-law negligence causes of action. Where "a plaintiff's injuries stem from the manner in which the work was being performed, no liability attaches to a defendant under the common law or under Labor Law § 200 unless it is shown that the [defendant] had the authority to supervise or control the performance of the work" (Triest v Nixon Equip. Servs., Inc. [appeal No. 2], 224 AD3d 1364, 1366 [4th Dept 2024] [internal quotation marks omitted]; see generally Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 352 [1998]; Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]). Here, defendants failed to meet their burden inasmuch as their own submissions raise triable issues of fact whether Dabney actually directed or controlled the work that resulted in plaintiff's injuries (see Triest, 224 AD3d at 1366).
Finally, we reject defendants' contention that the court abused its discretion in considering the affidavit of plaintiff's attorney in opposition to the motion on the ground that it exceeded the word limit set forth in 22 NYCRR 202.8-b (former [a]) (see generally Hart v City of Buffalo, 218 AD3d 1140, 1151 [4th Dept 2023]). The single affidavit was submitted in response to two summary judgment motions and in support of plaintiff's cross-motion, and was meant to be helpful to the court by avoiding the duplication of information in three separate affidavits.
Entered: February 11, 2026
Ann Dillon Flynn
Clerk of the Court