## Leon v Plaza Constr., LLC

2024 NY Slip Op 33449(U)

September 30, 2024

Supreme Court, New York County

Docket Number: Index No. 151025/2020

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. RICHARD G. LATIN**                           PART                                  **46M**

_Justice_

-----------------------------------------------------------------------------X

MANUEL LEON,

                                    Plaintiff,

                          - v -

PLAZA CONSTRUCTION, LLC, VS 125, LLC

                                    Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 151025/2020 |
| **MOTION DATE** | 09/21/2023 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63 were read on this motion to/for                          JUDGMENT - SUMMARY                          .

This is an action to recover damages for personal injuries allegedly sustained by a construction worker on September 27, 2017, when, while working atop a pile of rebar at a construction site located at 125 Greenwich Street, New York, New York (the "Premises"), the rebar moved, causing him to fall.

In motion sequence number 001, defendants Plaza Construction, LLC ("Plaza") and VS 125, LLC ("VS") (collectively, "defendants"), move, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them.

Plaintiff Manuel Leon cross-moves, pursuant to CPLR 3212, for summary judgment in his favor as to liability on his Labor Law §§ 240 (1) and 241 (6) claims against defendants.

## **BACKGROUND**

On the day of the accident, the Premises was owned by VS. VS hired Plaza to provide construction management services for a project at the Premises that entailed the new construction of a mixed-use high-rise building (the "Project"). Plaza hired non-party Structuretech New York, Inc. ("STNY") to construct the building's superstructure. Plaintiff was an employee of STNY.

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**                                    **Page 1 of 15**
  **Motion No.  001**

1 of 15

[* 1]

*Plaintiff's Deposition Testimony (NYSCEF Doc. No. 36)*

Plaintiff Manuel Leon testified that on the day of the accident, he was employed by STNY (plaintiff's tr at 20). Plaintiff was a "steel man" (*id.* at 52), responsible for passing rebar to other STNY workers. The rebar was of varying sizes ranging from 8-to-40-feet-long.

On the day of the accident, plaintiff was working on the second-floor deck of the Premises, assisting in laying down rebar "to start building to go up to the third" floor (*id.* at 57). He was directed to work there by his foreman, Roberto Figueroa (*id.* at 78). The deck was layered with rebar and, sometimes, plaintiff would have to "walk over or on top of the rebars" (*id.* at 59). Plaintiff clarified that this rebar was not installed, but rather piles of rebar that were stacked for installation (*id.* at 59-60 [the rebar was "put on top of those steel materials that were there . . . with a crane"]). He further testified that this rebar was "over four feet high" and he would have to walk over that rebar to hand off materials (*id.* at 59).

The stacked rebar was placed on steel tables that were approximately twenty feet long and six feet wide (*id.* at 87) (the "Table"). The combined height of the rebar on top of the Table was approximately four feet eight inches high (*id.* at 66). Plaintiff's work included handing out the rebar from the Table to other STNY workers (*id.* at 68 ["They would ask me for the pieces of rebar . . . and I would go and get them"]). Those workers would then install the rebar (*id.* at 69).

Plaintiff was not provided with any ladders to perform his work. Plaintiff asked Figueroa for ladders "[a]bout two times" but never received any (*id.* at 79). Plaintiff was asked why he needed a ladder to reach the top of a four-foot-tall pile. Plaintiff testified that he needed a ladder because he needed the extra height to find the right sized piece or rebar (*id.* at 85). Plaintiff also

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No.  001**

**Page 2 of 15**

[* 2]

INDEX NO. 151025/2020

RECEIVED NYSCEF: 10/01/2024

testified that Figueroa specifically told plaintiff to stand on the steel platform to find rebar (*id.* at 89).

Plaintiff testified that shortly before the accident, an STNY worker directed plaintiff to get a 15-foot piece of rebar from the pile on the Table (*id.* at 128). To find the right size of rebar, plaintiff stepped on top of the Table and then climbed onto the rebar pile (*id.* at 130). He found a piece of rebar of the right size and then he "stepped on some rebars that were loose. They were not tied off . . . so they started moving" (*id.* at 132). He then lost his balance and fell from the Table to the deck below (*id.* at 132). Specifically, the rebar under his feet "slipped and started to roll down all of the [other] rebar" (*id.* at 137), causing him to step or fall down to the deck below, with his right foot landing on another piece of rebar, causing it to twist and break (*id.* at 141-142).

At his deposition, plaintiff was shown a copy of an STNY accident report. He confirmed that the report was signed but stated that the signature on the report was not his (*id.* at 104). Plaintiff testified that he remembered someone filling out a report in front of him, but that he did not know what the report said because it was in English, which he does not speak or read (*id.* at 95-96). The person filling out the report spoke only in English, and no one translated for him (*id.* at 97-98).

Plaintiff was also shown a series of photographs depicting a work site. He testified that none of them depicted his work area or the object that he was standing on at the time of the accident (*id.* at 112, 118).

Finally, plaintiff testified that he had stood on the Table throughout the workday up until the accident (*id.* at 160).

[* 3]

### *Deposition Testimony of Michael Chiodo (Plaza's Trade Project Manager)* *(NYSCEF Doc. No. 37)*

Michael Chiodo testified that at the time of the accident, he was Plaza's trade project manager for the Project (Chiodo tr at 18). His duties included "help[ing] with bidding . . . [a]dminister[ing] contracts, submittals, RFI's, change orders" (*id.* at 14). Most of his work was done in an office, and he did not usually walk the site (*id.* at 25). Plaza's superintendent walked the site daily. Chiodo did not witness the accident (*id.* at 117).

VS was the owner of the Premises. It hired Plaza to provide construction management services on the Project. Plaza then hired the subcontractors, including STNY (*id.* at 17). STNY was the "superstructure concrete subcontractor" (*id.* at 17).

STNY's work involved installing rebar structures and pouring concrete onto those structures. The rebar structures "keep concrete structurally sound" (*id.* at 34). The rebar was delivered to the site in tied bundles (*id.* at 36). After delivery, STNY handled the rebar bundles. Chiodo did not know how the rebar was stored, transported or installed at the worksite (*id.* at 38).

Chiodo recalled that the rebar bundles were no more than "6 inches" high and were not typically stacked on top of each other (*id.* at 40). Rather, the bundles of rebar on the second floor were stacked "either on the form work or on other rebar, depending on where they were" (*id.* at 62-63). Loose rebar – that rebar that is ready for installation – could not be stacked, as "it would slide off of itself" because it is round (*id.* at 64).

At his deposition, Chiodo was shown a copy of Plaza's daily log for the day of the accident and confirmed its authenticity (*id.* at 54). He did not fill it out. Chiodo was also shown photographs attached to the daily log. The photographs depicted the second and/or third floor of the Premises. Chiodo reviewed the daily log and confirmed that it indicated that the accident involved a "rebar pile" (*id.* at 84). He also confirmed that some photographs depicted loose rebar on the ground (*id.*

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No.  001**

**Page 4 of 15**

[* 4]

at 77 and 107) and rebar piles (*id.* at 102). Those photographs were date stamped with the date of the accident (*id.* at 104).

### *Deposition Testimony of Omar Godoy (STNY's Worker) (NYSCEF Doc. No. 38).*

Omar Godoy testified that on the day of the accident, he was a construction worker employed by Structure Tech at the Project (Godoy tr at 19). His work included installing rebar and pouring cement (*id.* at 20). He was on the same work crew as plaintiff (*id.* at 27).

Godoy testified that at the time of the accident, plaintiff was "pass[ing] the rebars to the co-workers" (*id.* at 33-34). Godoy was working "four or five feet away from where [plaintiff] was" (*id.* at 36). The pile of rebar that plaintiff was taking pieces from was "[a]pproximately about four or five feet of height" (*id.* at 42). Some of the rebar in the pile was tied and some were loose. He testified that plaintiff was standing "on top of the bunch of the piles" of rebar (*id.* at 43), though he was not sure whether the rebar was loose or tied (*id.* at 44).

Godoy did not witness the accident. He heard a shout from a co-worker that someone fell. Godoy then walked over and saw plaintiff lying on top of some loose rebar, complaining of an ankle injury (*id.* at 47).

Godoy was shown a copy of an STNY accident report. He reviewed it and confirmed that his name appears on the report in the space marked "Witness Name" (*id.* at 54). He did not write his name on the form, or otherwise fill it out (*id.* at 54-55). Godoy also testified that he did not provide anyone with information about the accident (*id.* at 56).

### *Deposition Testimony of Roberto Figueroa (STNY's Rebar Foreman) (NYSCEF Doc. No. 39)*

Roberto Figueroa testified that on the day of the accident, he was STNY's rebar foreman for the Project. His work included supervising and directing STNY's rebar installers (Figueroa tr at 10). He was plaintiff's foreman (*id.* at 13).

**151025/2020  LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
  **Motion No.  001**

**Page 5 of 15**

Plaintiff's job on the day of the accident included passing rebar to other workers. Figueroa explained that "the rebars are placed on top of a table" before they are handed out (*id.* at 13-14). On the day of the accident, there was a lot of rebar to pass out, so there were more than one table placed together to hold it all (*id.* at 19). There were "between 8 to 10 tables" placed together (*id.* at 24). The tables were placed together to "accommodate the 30, 40 or 50 feet long rebars" (*id.* at 24). The tables themselves were "about two feet" tall (*id.* at 37).

Figueroa also testified that the rebar arrives in bundles tied together with wire (*id.* at 54), and a crane was used to place the rebar on the table. The workers then separate the rebar bundles for ease of installation (*id.* at 53). The bundles were not stacked on top of each other; and the bundle's height was no more than "an extra foot" on top of the table (*id.* at 55). Step stools or ladders were not needed to reach the bundles and were not used (*id.* at 55, 76). Figueroa also testified that, while it was not necessary to climb onto the tables, sometimes workers would "get on top to cut some kind of wire" (*id.* at 55).

Figueroa was shown photographs from STNY's "log" (*id.* at 15) and confirmed that they depicted a table used for laying out rebar during installation (*id.* at 17). He further confirmed that it was the type of table that plaintiff took rebar from (*id.* at 18). The photographs did not depict the accident location (*id.* at 49, 62).

In the morning, before the accident, Figueroa "had given [plaintiff] instructions to move the rebars around" (*id.* at 26). Initially, Figueroa testified that he "saw how [plaintiff] was standing in there and then he jumped" over the rebar pile and came down badly on his foot (*id.* at 26). Figueroa further testified that plaintiff "got up on the table and top of the rebars, and that's when his foot got hurt" (*id.* at 27). He stated that he did not know why plaintiff chose to jump over the rebar (*id.* at 28 ["I don't know what was his rush or why he did it like that"]).

151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC
Motion No. 001

Page 6 of 15

[* 6]

Subsequently, Figueroa testified that he did not witness the accident (*id.* at 29), that he had his "back towards [plaintiff]" at the time of the accident and had only heard from others that plaintiff jumped (*id.* at 31). When further questioned about what he saw, Figueroa testified that the last time he saw plaintiff, he was standing on the deck on one side of the tables (*id.* at 33). Figueroa also testified that he had seen plaintiff on top of the tables earlier in the day "because you need to . . . cut the cable, and to be able to move the rebars around" (*id.* at 33).

After the accident, Figueroa contacted his supervisor, Mike Duffy, and informed him of the accident (*id.* at 37). He also reported the accident to the "safety guy" (*id.* at 62). He did not speak with anyone about the accident (*id.* at 39). The report was prepared by "the safety guy" (*id.* at 62).

### *Affidavit of David Farrell (STNY's Safety Manager) (NYSCEF Doc. No. 40)*

David Farrell states that on the day of the accident, he was STNY's safety manager for the Project (Farrell aff, ¶ 1). He states that after the accident, he spoke with plaintiff and then prepared STNY's accident report (the STNY Accident Report) based on plaintiff's information. Farrell also states that plaintiff signed the report in front of him.

Farrell attaches a copy of the STNY Accident Report to his affidavit. The report indicates that plaintiff's accident occurred when plaintiff "jumped from stacked rebar on to deck" (*id.*, p. 4), and states that plaintiff "was stepping down from stacked rebar and twisted his right ankle" (*id.*, p. 4). The report lists Godoy as a witness and states that Godoy reported that he was working near plaintiff and "saw him hurt his ankle when he came down from rebar" (*id.*, p. 5).

### DISCUSSION

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the

**151025/2020 LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No. 001**

**Page 7 of 15**

7 of 15

[* 7]

absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [internal citations omitted]). Once prima facie entitlement has been established, in order to defeat the motion, the opposing party must "'assemble, lay bare, and reveal his [or her] proofs in order to show his [or her] defenses are real and capable of being established on trial . . . and it is insufficient to merely set forth averments of factual or legal conclusions'" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept 1993]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

### The Common-Law Negligence and Labor Law § 200 Claims

Defendants move for summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them. In their motion, defendants set forth sufficient evidence establishing that the accident arose from the means and methods of the work at the Premises, and that they did not have actual control over the injury producing work – i.e. the manner the workers handled rebar during installation (*see Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024] [dismissing common-law and section 200 claims where "there is no evidence that (the moving defendants) actually exercised control over the means and methods of plaintiff's work"]). Plaintiff does not oppose the dismissal of these claims.

Accordingly, defendants are entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them.

**151025/2020 LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No. 001**

**Page 8 of 15**

8 of 15

[* 8]

*The Labor Law §§ 240 (2) and 240 (3) Claims*

Defendants move for summary judgment dismissing the Labor Law §§ 240 (2) and 240 (3) claims against them on the ground that these provisions do not apply to the subject accident. Plaintiff does not oppose dismissal of these claims. Accordingly, defendants are entitled to summary judgment dismissing these claims.

*The Labor Law § 241 (6) Claims*

Defendants move for summary judgment dismissing the Labor Law § 241 (6) claims against them. Plaintiff cross-moves for summary judgment in his favor with respect to that part of the Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-2.1 (a) (1).

Labor Law § 241 (6) provides, in pertinent part, as follows:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>                                         * * *
> (6)    All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross v Curtis-Palmer Hydro-Electric Co.,* 81 NY2d at 501–502).

To sustain a Labor Law § 241 (6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers

[* 9]

only general worker safety requirements (*Messina v City of New York,* 300 AD2d 121, 122 [1st Dept 2002]; quoting *Noetzell v Park Ave. Hall Hous. Dev. Fund Corp.*, 271 AD2d 231 [1st Dept 2000]).  Such violation must be a proximate cause of the plaintiff's injuries (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]).  "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York,* 88 AD3d 951, 953 [2d Dept 2011]).

As an initial matter, plaintiff lists multiple violations of the Industrial Code in his bill of particulars. Except for Industrial Code 12 NYCRR 23-2.1 (a) (1), plaintiff does not seek affirmative relief or oppose their dismissal. These provisions are uncontested and deemed abandoned (*Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section"]).

*Industrial Code 12 NYCRR 23-2.1 (a) (1)*

Industrial Code 12 NYCRR 23-2.1 governs "maintenance and housekeeping."  Subsection (a) governs the "storage of material or equipment."  It provides, as relevant, the following:

> "(1) All building materials shall be stored in a safe and orderly manner.  Material piles shall be stable under all conditions and so located that they do not obstruct any passageway, walkway, stairway or other thoroughfare"

(12 NYCRR 23-2.1 [a] [1]).  Section 23-2.1 (a) (1) has been "held sufficient to support a section 241 (6) claim" (*Scannell v Mt. Sinai Med. Ctr.*, 256 AD2d 214, 214 [1st Dept 1998]).

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
  **Motion No.  001**

**Page 10 of 15**

10 of 15

Here, the loose pile of rebar involved in plaintiff's injury was not in storage, as the rebar was being installed at the time of the accident. Accordingly, "[s]ection 23-2.1 (a), which refers to storage of material, thus does not apply" (*Waitkus v Metropolitan Hous. Partners,* 50 AD3d 260, 260 [1st Dept 2008]; see also *Brown v Tishman Constr Corp. of N.Y.* 226 AD3d 529, 530 [1st Dept 2024 [the claim "predicated on Industrial Code § 23-2.1 (a) (1) was correctly dismissed because the rebar was not in storage but was being installed at the time of the accident"]; *Diaz v P&K Contr., Inc.,* 224 AD3d 405, 407 [1st Dept 2024] [upholding dismissal of section 23-2.1 (a) (1) where "at the time of his alleged injury, plaintiff was unloading the materials in question . . . to be used in shed construction"]). In addition, the materials were not alleged to obstruct any passageway, walkway, stairway or other thoroughfare (*Diaz*, 224 AD3d at 407).

Plaintiff's reliance on *Rodriguez v DRLD Dev. Corp*. (109 AD3d 409, 409 [1st Dept 2013]) is unpersuasive. The material pile at issue in *Rodriguez* was "not in use" at the time of the accident – i.e. it was stored (*id.*).

Accordingly, defendants are entitled to summary judgment dismissing the Labor Law § 241 (6) claim predicated upon a violation of Industrial Code 23-2.1 (a) (1). Plaintiff is not entitled to summary judgment in his favor on the same claim.

### *The Labor Law § 240 (1) Claim*

Defendants move for summary judgment dismissing the Labor Law § 240 (1) claim as against them. Plaintiff cross-moves for summary judgment in his favor on this claim.

Labor Law § 240 (1), known as the Scaffold Law, provides as relevant:

> "All contractors and owners and their agents . . . in the erection,
> demolition, repairing, altering, painting, cleaning or pointing of a
> building or structure shall furnish or erect, or cause to be furnished
> or erected for the performance of such labor, scaffolding, hoists,
> stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes,

**151025/2020  LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No.  001**

**Page 11 of 15**

11 of 15

and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

> "The statute is violated when the plaintiff is exposed to an elevation-related risk while engaged in an activity covered by the statute and the defendant fails to provide a safety device adequate to protect the plaintiff against the elevation-related risk entailed in the activity or provides an inadequate one"

(*Jones v 414 Equities LLC*, 57 AD3d 65, 69 [1st Dept 2008]; *O'Brien v Port Auth. of N.Y. & N.J.*, 29 NY3d 27, 33 [2017] [section 240 liability "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein"]). In addition, Labor Law § 240 (1) "must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC,* 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

However, not all workers injured at a construction site fall within the scope of protections of section 240 (1). "[A] distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia*

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**                                        **Page 12 of 15**
  **Motion No.  001**

*Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240 (1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site"). Instead, liability is "contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Nicometi v Vineyards of Fredonia, LLC*, 25 NY3d 90, 97 [2015], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

Therefore, to prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

Initially, it is uncontested that defendants are proper Labor Law defendants, such that liability would attach to them under section 240 (1).

Here, plaintiff asserts that he was required to work from a height because he had to climb onto the Table and then onto the materials laid out on the Table in order to do his job (plaintiff's tr at 59, 85). Defendants assert that plaintiff's work area was the deck – i.e. effectively the ground surface – and that plaintiff did not need to climb on top of the Table to perform his work (Figueroa tr at 55, 76).

In its simplest form, then, the question at issue here is whether plaintiff was required to work from an elevated height, such that the powerful protections of section 240 (1) would apply (*see e.g. Broggy v Rockefeller Group, Inc.,* 8 NY3d 675, 681-682 [2007] [a "plaintiff must establish that he stood on [the surface] because he was obligated to work at an elevation" to perform his work]). On this point, neither party meets their prima facie burden for summary judgment.

**151025/2020  LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
**Motion No.  001**

**Page 13 of 15**

13 of 15

[* 13]

Specifically, there is conflicting testimony as to whether plaintiff was required to climb onto the Table or the rebar itself to perform his work (plaintiff's tr at 59, Figueroa tr at 55, 70).

Plaintiff's position is supported by plaintiff's own testimony and an expert's affidavit (cross-motion, exhibit 6; NYSCEF Doc. No. 55). That expert's opinion – which opines that plaintiff's work involved height related risks – is premised on plaintiff's testimony and provides, essentially, no other support or insight (*see e.g. Hernandez-Ortiz v 2 Gold LLC,* 170 AD3d 465, 466 [1st Dept 2019] [the plaintiff's expert's opinion failed to raise a question of fact because the "experts' opinions were conclusory and unsupported by objective data"]).

Defendants' position is supported by Figueroa's testimony that plaintiff did not need to work from a height, photographs that do not depict the accident location (plaintiff's tr at 112; Figueroa tr at 49, 62), and an accident report that is disputed by plaintiff and the named witness, Godoy (who states that he did not witness the accident, did not fill out the accident report, and did not speak with anyone) (plaintiff's tr at 95-96, 104; Godoy tr at 54-56). No other testimony or expert opinion is offered in support of defendants' argument that plaintiff was not obligated to work from the top of the Table.[1]

Effectively, neither side has established, as a matter of law, whether plaintiff's work required him to be at an elevation, such that section 240 (1) would or would not apply (*see e.g. . Broggy.,* 8 NY3d at 681-682; *McLean v 405 Webster Ave. Assoc.,* 98 AD3d 1090, 1095 [1st Dept 2012] [affirming the dismissal of a section 240 (1) claim where the "defendants established, prima facie, that the plaintiff was not obligated to work at an elevation to perform the work"]).

---

[1] Defendants' expert affidavit is tailored only to rebutting plaintiff's expert and is not offered in support of their motion.

**151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC**
  **Motion No.  001**

**Page 14 of 15**

14 of 15

Given the foregoing, neither plaintiff nor defendants are entitled to summary judgment with respect to the Labor Law § 240 (1) claim.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that motion of defendants Plaza Construction, LLC and VS 125, LLC, pursuant to CPLR 3212, for summary judgment dismissing the complaint is granted to the extent that the common-law negligence and Labor Law §§ 200 and 241 (6) claims are dismissed, and the motion is otherwise denied; and it is further

**ORDERED** that the cross-motion of plaintiff Manuel Leon, for summary judgment in his favor on his Labor Law §§ 240 (1) and 241 (6) claims is denied; and it is further

**ORDERED** that the remainder of this action will continue.

This constitutes the decision and order of the court.

| 9/30/2024 | | | | RICHARD G. LATIN, J.S.C. |
|---|---|---|---|---|
| **DATE** | | | | |

**CHECK ONE:**

| | | | | |
|---|---|---|---|---|
| | CASE DISPOSED | | X | NON-FINAL DISPOSITION |
| | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| **APPLICATION:** | SETTLE ORDER | | | SUBMIT ORDER |
| **CHECK IF APPROPRIATE:** | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

151025/2020   LEON, MANUEL vs. PLAZA CONSTRUCTION, LLC
Page 15 of 15
Motion No.  001

15 of 15